

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EAG/RN/AL  
F.#2010R00195

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

October 15, 2011

<u>By Hand Delivery and ECF</u>

The Honorable Sandra L. Townes
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: United States v. Francis Guerra
     <u>Criminal Docket No. 10-147 (S-2)(SLT)</u>

Dear Judge Townes:

  The government respectfully submits this letter to notify the Court of potential attorney conflicts of interest that have come to the government's attention in the above-captioned case against Francis Guerra (the "defendant"), an associate of the Colombo organized crime family of La Cosa Nostra (the "Colombo family"). Specifically, one of the defendant's attorneys, Mathew Mari, Esq., previously represented an individual (hereinafter, the "CW") who is now cooperating with the government and who the government anticipates will testify at trial against the defendant. In addition, Mr. Mari and the defendant's other attorney, Gerald J. McMahon, Esq., have also represented other members and associates of La Cosa Nostra, including Colombo family soldier Anthony Stropoli, an unindicted co-conspirator of the defendant whose conduct may be at issue in the upcoming trial. Accordingly, the government requests that the Court appoint <u>Curcio</u> counsel for the defendant and schedule a <u>Curcio</u> hearing after appointed counsel has had adequate time to consult with the defendant.

  As set forth below, the government advises the Court of these circumstances in accordance with Rule 44(c) of the Federal Rules of Criminal Procedure ("Rule 44(c)") and pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to <u>United States v. Curcio</u>, 680 F.2d 881, 888-90 (2d Cir. 1982). <u>See</u>, <u>e.g.</u>, <u>United States v. Stantini</u>, 85 F.3d 9, 13 (2d Cir. 1996); <u>United States v. Malpiedi</u>, 62 F.3d 465, 467 (2d Cir. 1995).

2

I.   <u>Background</u>

   A.   <u>The Charged Racketeering Conspiracy</u>

   On August 17, 2011, a grand jury returned a superseding indictment charging the defendant with, <u>inter</u> <u>alia</u>, racketeering conspiracy in connection with his association with the Colombo family, in violation of 18 U.S.C. § 1962(d).  On August 18, 2011, the indictment was unsealed, the defendant was arrested and arraigned, and Messrs. McMahon and Mari represented him at the arraignment.  On August 19, 2011, Mr. McMahon filed a notice of appearance as counsel for the defendant.[1]

   The defendant engaged in the charged racketeering conspiracy with Colombo family members and associates, including the CW, who, prior to his cooperation, held the position of acting captain in the Colombo family and had very close ties to the defendant.

   B.   <u>Defense Counsel</u>

   Mathew Mari, Esq., represented the CW in connection with two separate cases in which the CW was charged with racketeering-related crimes.  First, Mr. Mari represented the CW in a court proceeding in which the defendant and the CW were jointly charged.  Although Mr. Mari did not directly represent the CW in that court proceeding, Mr. Mari attended joint defense meetings with the defendant and the CW.  Second, in 2010, the defendant and the CW together met with Mr. Mari in anticipation of their eventual arrest for the murder of Joseph Scopo, which is charged in Racketeering One of Count One in the above-captioned indictment.  The CW has advised that he does not object to Mr. Mari representing the defendant in this case.

   In addition, both Mr. Mari and Mr. McMahon have represented other members and associates of the Colombo family.  Court records reveal that Mr. McMahon represented Colombo family member Stropoli, <u>see</u> <u>United States v. Lino, et al.</u>, 00 CR 632 (S.D.N.Y.), and Mr. Mari represented Colombo family associate Anthony Durso, <u>see</u> <u>United States v. Russo</u>, 11 CR 30 (KAM).

---

   [1]   Mr. Mari has not filed a notice of appearance in this case, but he appeared in court, with Mr. McMahon, on the defendant's behalf on August 18, 23 and 25, 2011.

II.  Applicable Law

   A.   Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel.  See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003).  That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing.  See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).  While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict."  Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, the court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."  United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994).  An actual conflict exits "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client."  Jones, 381 F.3d at 119 (internal quotation marks and citations omitted).  A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future."  Id. (emphasis and citations omitted).  If the attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney.  See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995).

Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  Wheat, 486 U.S. at 160.  "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial."  Locascio, 6 F.3d at 931.  Accordingly, "a district court should decline to permit a defendant to be represented by the

counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

    B.    Potential Conflicts

An attorney's prior representation of a government witness or an unindicted co-conspirator presents an inherent conflict of interest. See Locascio, 6 F.3d at 931; United States v. Ioizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client[.]"). This is because a lawyer owes an absolute duty of loyalty and confidentiality to his former client. United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment.").

That means that a lawyer cannot use privileged information obtained from his former client during prior representation that would adversely affect that client in the present proceeding. United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Thus, in representing his current client, a lawyer cannot attack his former client through cross-examination or argument to the jury. United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross-examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently"). This effectively precludes a lawyer from vigorously cross-examining his former client or commenting on his credibility, which may be essential to the effective representation of his current client. United States v. Kelly,

870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests," a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995) (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney"). Therefore, a lawyer who previously represented a government witness may be disqualified from representing a defendant against whom that witness is expected to testify. United States v. Spataro, 04 CR 911 (SJ), 2005 WL 3775954, at *2-4 (E.D.N.Y. Dec. 23, 2005) (disqualifying defense counsel in part because of "a serious conflict between duties owed to [a government witness] as a former client and [the defendant] as a current client").

In addition, prior representation of a government witness or an unindicted co-conspirator may create a conflict limiting the defendant's ability to enter into plea negotiations or cooperate with the government. United States v. Christakis, 238 F.3d 1164, 1169 (9th Cir. 2001) (attorney's interest in protecting the former client conflicted with the defendant's interest in implicating the former client for reduced sentencing); United States v. Allen, 831 F.2d 1487, 1496-97 (9th Cir. 1987); but see Pizzonia, 415 F. Supp. at 180 ("[s]imultaneous representation of an unindicted co-conspirator does not necessarily create an 'inherent conflict' limiting a defendant's ability to enter plea negotiations").

Where representation of a former client is substantially related to representation of the current client –– i.e., involving the same subject matter -- the Second Circuit has found an actual conflict of interest. See, e.g., Malpiedi, 62 F.3d at 467 (reversing the guilty verdict because the defendant's attorney represented a government witness during the grand jury proceeding in the same case); Ciak v. United States, 59 F.3d 296, 304 (2d Cir. 1995) (reversing the guilty verdict because the defendant's attorney represented a government witness in a related forfeiture proceeding), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002); James, 708 F.2d at 46 (affirming disqualification of an attorney who formerly represented the head of a narcotics organization in a related case, finding "that the present issues are substantially related to the subject matter of the past representation, and that defense counsel quite likely have received confidential

6

information from the witness" such that "even the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confidential knowledge gained from prior representation of the witness.").

C. Curcio Waiver

If the conflict of interest is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

The need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("'[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.'") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)) (emphasis added); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual

7

representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

III. Discussion

Based on the facts set forth above, there exist potential conflicts of interest. Mr. Mari previously represented the CW. Therefore, Mr. Mari may be precluded from cross-examining the CW or attacking his credibility. The defendant has not indicated whether he agrees to waive his right to have Mr. Mari cross-examine the CW or comment on the CW's credibility at trial.[2]

In addition, Mr. McMahon represented Stropoli, an unindicted co-conspirator who was a close criminal associate of the defendant and the CW, and Mr. Mari previously represented at least one other Colombo family associate. Therefore, both Mr. McMahon and Mr. Mari may be precluded from properly advising the defendant as to his options in this case because certain options may be adverse to the interests of their former clients. Among other things, the defendant could potentially receive a reduced sentence if he were to truthfully implicate Stropoli or other members and associates of the Colombo family in crimes. The defendant's cooperation with the government would be directly adverse to these individuals' interests.

\* \* \*

Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator or government witness. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross-examine a former client in order to effectively represent a

---

[2] Should the defendant not agree to such a waiver, or should the Court refuse to accept the waiver, then Mr. Mari's prior representation of the CW may require his disqualification. Spataro, 2005 WL 3775954 at *3 ("An independent basis for disqualification can arise when an attorney must cross-examine at trial a witness who is a former client.").

current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

IV. Proposed Questions

In the event the Court determines that the defendant can waive the potential conflicts of interest, the government proposes that the Court advise the defendant as follows:

> I am advised that Mr. Mari previously represented a cooperating witness, to whom I will refer as the "CW," and that both of your attorneys have previously represented other members and associates of the Colombo family. Your attorneys have certain ethical obligations to their current or former clients. For example, it might be a conflict of interest for your attorneys to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on their former clients, including the CW. In addition, it might be a conflict of interest for Mr. Mari, who previously represented the CW, to cross-examine the CW or make arguments about his credibility.
>
> Your attorneys also may have privileged information from their former clients that could assist in your defense but that they could not disclose because of their ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crime charged against you, whereas your attorneys may be ethically barred from pursuing such a defense strategy due to contrary information they may have obtained from their former clients.

There may be other issues, in addition to the ones that I have just described, that can arise in which your attorneys' ability to do certain things might be affected by the fact they represented other clients in matters related to this case or the Colombo family. No one can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with your attorneys, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorneys?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorneys. Do you understand that?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyers or with another lawyer before you advise the Court what you wish to do.

V.  Conclusion

For the foregoing reasons, the Court should notify the defendant of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Rule 44(c) and Curcio. The Court should further advise the defendant regarding his right to conflict-free representation and determine if he can waive those rights.

Respectfully submitted,

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By: _____/s/_____
Elizabeth A. Geddes
Rachel Nash
Allon Lifshitz
Assistant U.S. Attorneys
(718) 254-6430/6072/6164

cc: Mathew Mari, Esq. (by ECF)
    Gerald J. McMahon, Esq. (by ECF)