UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,   :

   -against-      :   10 Cr. 147 (S-4) (SLT)

ALICIA DIMICHELE, et al.,    :

      Defendants.  :

-------------------------------------------------------x

**DEFENDANT GUERRA'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION FOR ANONYMOUS
AND PARTIALLY-SEQUESTERED JURY**

Gerald J. McMahon, Esq.
*Attorney for Defendant Guerra*
The Standard Oil Building
26 Broadway, 18th Floor
New York, New York 10004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,                    :


    -against-                                          :           10 Cr. 147 (S-4) (SLT)


ALICIA DIMICHELE, et al.,                        :

           Defendants.                        :

------------------------------------------------------x



**DEFENDANT GUERRA'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION FOR ANONYMOUS
AND PARTIALLY-SEQUESTERED JURY**


<u>Introduction</u>

    This memorandum is submitted in opposition to the government's motion for an anonymous and partially-sequestered jury. Defendant Francis Guerra ("defendant" or "Guerra") opposes this request because the reasons proffered by the prosecution fail to demonstrate that this drastic and prejudicial remedy is warranted herein.

**ARGUMENT**

I. Anonymous Juries Are Unconstitutional

Tracing its history back to ancient Greece and early Roman law, the United States Supreme Court has stated that the "presumption of innocence in favor of the accused is ... undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Although not articulated in the Constitution, the presumption is a basic component of a fair trial under our system of criminal justice. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Because an anonymous jury raises the specter that a defendant is a dangerous person from whom the jurors must be protected, it undermines that presumption of innocence. *United States v. Wong,* 40 F.3d 1347, 1376  (2d Cir. 1994), cert. denied, 516 U.S. 870 (1995).

In the more than thirty years since an appellate court first upheld the use of an anonymous jury (*United States v. Barnes*, 604 F.2d 121 (2d Cir. 1979), cert. denied, 464 U.S. 907 (1980)), the United States Supreme Court has never ruled on the constitutionality of such a fundamental change in the way criminal trials are conducted. Despite that lack of judicial imprimatur, anonymous juries today are becoming the norm, rather than the exception. This ever-increasing use of anonymous juries, is making a prophet of Circuit Judge Oakes who, in his dissent from the denial of the petition for rehearing *en banc* in *Barnes*, wrote:

> The panel majority affirming the appellant's conviction adopted an
> entirely new rule of law that so far as I know stands without precedent
> in the history of Anglo-American jurisprudence. (....) I believe that

2

> the issue is of sufficient importance to be deserving of *en banc* treatment
> since judges in other narcotics cases are sure to follow its precedent
> as, to borrow a simile of Judge Timbers, a flock of sea gulls follows a
> lobster boat.

*Barnes*, 604 F.2d at 175. The floodgates have opened, not just for narcotics cases as Judge

Oakes feared, but for almost all "organized crime" cases and now anonymous juries are

virtually the norm whenever defendants are charged with crimes of violence. See *United*

*States v. Amuso*, 21 F.2d 1251, 1264 (2d Cir.), cert. denied, 513 U.S. 932 (1994) ("the record

adequately supports the district court's conclusion that there was reason to believe the jury

needed protection. The indictment charged that Amuso was responsible for crimes of extreme

violence...").

As Mr. Justice Holmes stated in dissent in *Northern Securities Co. v. United States*,

193 U.S. 197, 400-01 (1904), "Great cases like hard cases make bad law."  The *Barnes*

decision, involving the notorious Nicky Barnes, is bad law and it is time for some court, any

court, to say so and to prevent further erosion of the ever-diminishing presumption of

innocence by prohibiting this practice which violates defendant's Sixth Amendment right to

"trial by an impartial jury" and his Fifth Amendment right to due process and a fair trial.

II. The Facts Do Not Justify An Anonymous and Partially-Sequestered Jury in This Case

A motion for an anonymous jury should be denied unless "a serious threat to juror

safety is reasonably found to exist." *Wong*, 40 F.3d at 1376. Anonymous juries seriously

infringe on a defendant's constitutional rights and, thus, should not be ordered absent "strong

3

reason to believe the jury needs protection" and the district court "tak[es] reasonable precautions to minimize any prejudicial effects on the defendant and to insure that his fundamental rights are protected." Id. (citing *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991); *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991)); see also *United States v. Locascio*, 357 F.Supp.2d 558, 560 (E.D.N.Y. 2005) (cautioning that "empaneling an anonymous jury is a very serious decision" that should not be treated as a routine application). Caselaw is clear that an anonymous jury is **not** warranted merely because the defendants are alleged to be associates, or even members, of organized crime. *Vario*, 943 F.2d at 241.

To determine whether there is "strong reason" to believe that a particular jury requires protection, a court should consider (a) the seriousness of the charges; (b) the dangerousness of the defendant; (c) the defendant's ability to interfere with the jury; (d) whether there is evidence of previous attempts to interfere with the judicial process; and (e) the nature and degree of publicity in connection with the case. *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994). In deciding whether to grant an anonymous jury, the court should also balance the defendant's interest in maintaining the presumption of innocence and in conducting an effective *voir dire* against the need to protect the safety of the jurors as well as the public interest in obtaining a fair verdict. Consideration of all the above-listed factors makes clear that an anonymous jury is not warranted in the instant case.

4

A. <u>Seriousness of the Charges</u>

There is no question that the charges in the instant matter are serious. Defendant is charged with RICO conspiracy, based on predicate acts alleging two, twenty-year old murders (Scopo and Devine), two extortions, and a number of other non-violent racketeering acts and related substantive crimes. Notably, defendant is not charged with witness or jury tampering or obstruction of justice. The government cites the fact of the serious (but unproven) charges, and the Colombo crime family's lengthy history, in support of its motion. It appears, however, that the government's argument in this regard simply bootstraps the past alleged history of the Colombo family and unjustifiably imputes this past conduct to defendant Guerra who, it admits, is no more than an associate.

With respect to the Scopo and Devine murders, while the charges are the most serious, the evidence is extraordinarily thin. John Pappa was tried and convicted in 1999 of murdering Joseph Scopo, and is serving a life sentence at the United States Penitentiary at Allenwood, PA. Testimony at the Pappa trial revealed the following facts. There were two cars involved in the Scopo murder: in the first car was Pappa, the designated shooter, cooperating witness Anthony Russo who was driving, and John Sparacino in the back seat. The government claim that Guerra was in the back seat was flatly contradicted by the Pappa trial testimony. The second car was driven by Eric Curcio. Long after the Scopo murder, Pappa killed Curcio and Sparacino and he was convicted of those murders, as well as the Scopo murder.

5

Anthony Russo was arrested with 127 others on "Mafia Takedown Day" on January 20, 2011. The first count of his indictment charged him with the murder of Joseph Scopo. In an effort to avoid death by lethal injection, or life without parole, Russo became a cooperator in early February 2011 and apparently told the government that Guerra was at the scene of the Scopo murder. The weakness of Russo's testimony, even from the government's perspective, is readily apparent from the fact that Guerra wasn't arrested until August 2011, and the government spent the intervening six months trying to get him to cooperate.

With respect to the Devine murder, confidential informant or cooperating witness Frankie "Blue Eyes" Sparaco shot and killed Michael Devine in an underground garage in Staten Island. Sparaco pled guilty in the Eastern District to that crime (and four other murders) and was sentenced to 24 years in jail. Tired of serving his jail sentence, Sparaco is now apparently telling Federal agents that Guerra had something to do with the Devine murder. Defendant categorically denies any such involvement, and the government is unlikely to get any conviction based on the uncorroborated testimony of a mass murderer.

The government's case on the two extortions is also weak. John Doe # 12 told a defense investigator in a recorded conversation that he was not extorted by Frank Guerra, and John Doe # 7 is a marijuana trafficker who owed CW Anthony Russo, not defendant Guerra, money.

B. Dangerousness of the Defendant

While the government argues that defendant Guerra was a longtime associate of

the Colombo family, and was even proposed for induction in December 2010, it makes no effort to explain why such a dangerous person (its present claim) would be allowed to remain on the street for six months after Anthony Russo became a cooperating witness. The government also makes much of its claim that co-defendants of Guerra are ranking members of the Colombo family, but the allegation that a defendant was a Genovese family capo involved in ongoing violent crimes was not enough to persuade Judge Glasser to order and anonymous jury in *United States v. Coffey*, 05 Cr. 651 (ILG) (E.D.N.Y., September 15, 2005) (docket entry # 130). In other recent cases in this district, Judge Gleeson refused to order an anonymous jury in *United States v. Michael Coppola*, 08 Cr. 763 (JG) despite the fact that the defendant was charged with murder and was alleged to be high-ranking member of the Genovese family. And, in *United States v. Anastasio*, 06 Cr. 815 (BMC) (E.D.N.Y., October 16, 2008), Judge Cogan denied the government's request for an anonymous jury despite the defendants' alleged membership in the Gambino family and charges of Hobbs Act extortion.

C. Defendant's Ability to Interfere with the Jury

Defendant Guerra will be in jail during the pendency of this trial. As such, he does not possess the ability to intimidate jury members himself which means that no reasonable juror has cause to fear him personally. Additionally, the government has failed to establish any connection between defendant and the intimidation tactics allegedly practiced by members of the Colombo family.

7

D. <u>Previous Attempts to Interfere with Judicial Process</u>

As stated previously, defendant Guerra has no history of witness or jury tampering or obstruction of justice. Additionally, he is not a soldier of the charged Colombo family enterprise, but rather only an alleged associate.

E. <u>Media Coverage</u>

While there may be some media coverage, it is not expected that this trial will be covered by the press as if it were a John Gotti trial. The government is relying  solely upon speculation to argue that significant media attention could occur in the future. Such speculation simply does not justify the conclusion that jurors require anonymity.

III. <u>Conclusion</u>

In a recent Eastern District case which combined the mafia, murder, and intense media coverage, Judge Weinstein explained why he did **not** order an anonymous jury:

> The use of such a jury is contrary to general history and policy; historically, everyone knew who the jurors were in any trial. Moreover, the use of an anonymous jury would be demeaning. Juries in the Eastern District are made up of solid citizens who do not frighten easily. Since the Battle of Long Island in 1776 they have done their duty to preserve liberty. They do not need to hide.

*United States v. Eppolito*, 2006 U.S. Dist. LEXIS 3121, 2006 WL 220061, at *7-8 (E.D.N.Y. January 30, 2006).

Based upon the foregoing, it is clear that the government has not met its burden of demonstrating that there is "strong reason" (*Wong*, 40 F.3d at 1376) to believe that a jury in

8

this case needs protecting. Accordingly, the government's motion for an anonymous and

partially-sequestered jury should be denied.

Dated: New York, New York
      March 5, 2012

Gerald J. McMahon, Esq.
*Attorney for Defendant Guerra*
The Standard Oil Building
26 Broadway, 18th Floor
New York, New York 10004
212.797.1877
212.797.1419 (fax)
gm@geraldjmcmahon.com (e-mail)


To:    All Counsel
      (by ecf)


doc137

9