
```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,     :  05-CR-060(NGG)
                              :
                              :
     -against-                :  United States Courthouse
                              :  Brooklyn, New York
                              :
                              :
                              :
VINCENT BASCIANO,             :  Friday, April 8, 2011
                              :  9:30 a.m.
          Defendant.          :
                              :
- - - - - - - - - - - - - - -X
```

          TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
             BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
                    UNITED STATES DISTRICT JUDGE

                         A P P E A R A N C E S:

```
For the Government:    LORETTA E. LYNCH, ESQ.
                       United States Attorney
                       Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                       BY: TARYN A. MERKL, ESQ.
                           JACK DENNEHY, ESQ.
                           Assistant United States Attorneys


For the Defendant:     LAW OFFICES OF RICHARD JASPER, ESQ.
                       Attorneys for the Defendant -
                       Vincent Basciano
                           276 Fifth Avenue
                           Suite 501
                           New York, New York 10001
                       BY: RICHARD JASPER, ESQ.
                           YING STAFFORD, ESQ.
```

Colloquy 4421

1  THE COURT: If you change your mind, you need to
2  let me know in advance.
3  MR. GOLTZER: This is the case to raise *Daubert*
4  issue for reasons we don't need to go into on the record.
5  We're not going to change your mind.
6  We researched the issue short of asking for a
7  *Daubert* hearing and revisiting an entire area of law; it's
8  clear it would be inappropriate.
9  THE COURT: Okay. What else?
10 MR. GOLTZER: Couple of issues may come up in
11 connection --
12 THE COURT: Those are my law clerks back there.
13 MR. GOLTZER: I recognize one of them.
14 Couple of things may come up before the
15 opening, I'd like to avoid. I'm not sure it requires a
16 brief but we should probably alert your Honor to them.
17 Would you like me to do it now?
18 THE COURT: Let's do it now while we have, while
19 we are together.
20 MR. GOLTZER: One of the things that happened at
21 the first couple of trials was cooperating witnesses were
22 permitted to tell jurors that they had pled guilty before
23 your Honor.
24 I think that's problematic in this case
25 because one of the cooperators, Sal Vitale, was sentenced

Colloquy 4422

1  before your Honor.  The nature of the sentence that he
2  received we think we should be permitted it bring up both on
3  opening and in cross-examination of other cooperators as to
4  the interests and motives they have in testifying and
5  pleasing the Government and in the kinds of sentences they
6  think they might, in fact, hope to receive.
7           It's the standard kind of cross-examination
8  at other trials, the Gravano issue came up.  We think, under
9  §403, it would be inappropriate if the juror -- if the jury
10 learned that your Honor had a particular -- had taken a
11 particular view of a particular cooperator giving him time
12 served, for example, for a number of murders it plight
13 complicate things and we think best out of the case if
14 everybody said, "You pled guilty before a federal district
15 court judge."  It's the same kind of thing the Government
16 raised with respect to prior trials without mentioning the
17 name of the person involved.  So, that's our position on
18 that.
19          THE COURT:  Do you have any problem with that.
20          MS. MERKL:  Your Honor, we have no problem
21 advising the cooperating witnesses not to mention you
22 specifically in regards to their plea allocutions.
23          With regard to the propriety of
24 cross-examining cooperators with regard to specific
25 sentences different cooperators received, however, we think

1   that's somewhat problematic.
2            THE COURT:  Are you talking about asking them
3   about the sentences they received?
4            MR. GOLTZER:  No.
5            MS. MERKL:  He's talking about, you know, asking
6   what witness A knew about Sal Vitale's sentence and that
7   seems to the Government somewhat problematical because we
8   don't tell our cooperators what sentences people receive.
9            They may or may not know, and I think
10  Mr. Gravano was used as a historical example, but giving
11  them case by case.  It becomes very complicated and then
12  what do we do on redirect how many murders did you do versus
13  Sal?  What do you think you're goes to get versus Sal?  It
14  becomes extremely complicated about having trials within
15  trials about other individuals' culpability.
16           MR. GOLTZER:  That's not a trial within a trial
17  and that's not exactly what we want to do.
18           Virtually all of the cooperators have yet to
19  be sentenced.  What they're going to tell the jury, if
20  experience is any guide, "I took a plea, I'm facing a
21  maximum penalty of life."  "I have no idea what I'm going to
22  get."  The defendant didn't make me a promise and it's up to
23  the judge which is basically a technically truthful
24  sentence.
25           Yes, we all know as grownups that these


Colloquy                                                          4424

1    cooperators have expectations.  For example, Joe Massino
2    isn't cooperating with the United States Government so that
3    he can keep the benefits of his two life sentences without
4    parole, he hopes for better.
5              We can ask him, I suggest, "Do you know what
6    the sentence was for Mr. Gravano?"  "Do you know what the
7    sentence was for Mr. Vitale?"  "Do you hope to do as well?"
8    If he says, "I don't know," I think it would probably be
9    inappropriate for me to tell him.  It's clear he knows, he's
10   been following the papers as well as anybody else.
11             The Vitale sentence got an awful lot of
12   press.  Cicale knows what it is and if he doesn't know it I
13   won't follow it up with a follow-up.  If they know what the
14   sentence is, or if they know what Sammy Gravano got, I think
15   we have the right in terms of Sixth Amendment confrontation
16   to ask them that question.  "You expect a lot better, don't
17   you?"  "You may not know specifically what you're going to
18   get, but you're hoping to get X."  And if you don't satisfy
19   the Government in terms of your 5K, you're not going to get
20   it.
21             THE COURT:  Well, that brings us into the whole
22   issue of what it takes to get a 5K.  I'm not litigating that
23   here.
24             MR. GOLTZER:  We're not going -- we're not trying
25   to go back to the issue of the death penalty if that's what

you're referring to.

THE COURT: What I'm referring to is that each and every one of those people pleaded guilty before I sentenced anybody. So, they had no idea what they would get when they pleaded guilty. They pleaded guilty to a cooperation agreement because they did think that by cooperating they would do better than by going to trial.

MR. GOLTZER: Absolutely.

THE COURT: Or by just taking a plea to a plea agreement.

MR. GOLTZER: Absolutely.

THE COURT: So, my thought is that unless your implication is that because these other people got certain sentences that they now know about that there's an added incentive for them to lie.

Is that the implication of what you're seeking to find out?

MR. GOLTZER: There is an interest on the part of the cooperator to please the Government to secure the 5K letter because the cooperators know from hearing and learning about what other people get as a result of cooperating that they need to do that in order to receive a very wonderful benefit that they expect.

If we leave the jury with the impression that they do not have any expectation of a wonderful gain and

Colloquy                                            4426

they're simply remorseful and redemptive because they've decided to plead guilty, that's not a true picture of what really happens here.

These folks sit down together -- and the judge gets it -- your Honor gets the point.

So, I wanted to raise that issue before I blurted something out that might be offensive to everybody.

THE COURT: I will let you know in a timely way.

MS. MERKL: The Government's concern, your Honor, is really creating collateral issues before the jury that are very hard to explain to jurors because each witness is obviously situated differently.

And so, it's comparing apples with oranges and I don't think reference to specific dispositions and specific cases necessarily advances Mr. Goltzer's argument.

I don't think that, with Mr. Goltzer's effective cross-examination skills, that they are -- the jurors are going to be left with some impression that the cooperators don't expect that they're going to, you know, that their purpose in cooperating is to get out of jail earlier and/or get a reduction in sentence. There won't be any doubt about that in the jurors' minds.

The Government's concerns are that if you are discussing it in reference to particularized people, then, you know, the follow-up redirect entails facts that are

Colloquy 4427

1  completely collateral to this trial, well, how many
2  people did -- do you know how many people Sal Vitale
3  provided information about? Do you know how many pages his
4  5K was? Do you know that he walked in off the street and
5  told the Government about additional murders he had not been
6  charged with? Do you know all the facts and circumstances,
7  I mean, it becomes very, very problematic to compare
8  cooperators' individual circumstances with one another with
9  broad brush strokes. That's the Government's concern.
10             MR. GOLTZER: I'm delighted to, as part of my
11 cross-examination, bring out quite accurately that everybody
12 is judged individually on their own facts and circumstances,
13 and the witnesses understand that the judges aren't party to
14 the agreement and that the judges have to get a probation
15 report and the judges make their own independent judgment.
16             And no one, number one is going to try to
17 make any client as part of the plea bargaining in violation
18 of Rule 11. Number two, we may call Sal Vitale if the
19 Government doesn't because we have the right to present
20 negative character witnesses about government witnesses.
21 And Sal Vitale has discussed Joe Massino's reputation with
22 other members of Mob and it's negative. If we call Sal
23 Vitale, in the event that the Government doesn't, we would
24 want to bring him who he was and that he was a cooperator
25 and that he'd been sentenced.

1       So, I think there's a real possibility if
2  either party calls Sal Vitale that the jury is going to
3  learn what his sentence was.
4       THE COURT: Well, that's one thing but that's not
5  the point. The point is that you want to ask other
6  cooperators if, based upon, let's say, the sentence that Sal
7  Vitale got that they have a particular interest in being
8  helpful to the Government which might cause them to be less
9  than truthful for instance.
10      MR. GOLTZER: Well.
11      THE COURT: Wait.
12      That brings into question what the Court did
13  with Sal Vitale. I'm note not putting in there why the
14  Court gave that sentence.
15      MR. GOLTZER: I have no intention of going there.
16      THE COURT: Well, but you are going there, aren't
17  you?
18      MR. GOLTZER: No.
19      THE COURT: You are going there because you are
20  trying to create the impression that, for some reason,
21  someone who was, you know, extremely violent is now getting
22  a six-year or seven-year or eight-year sentence and let the
23  jury possibly come to the conclusion that the system isn't
24  fair or, you know, this is all part of stacking the deck
25  against your client. But the reasons why he got that

1   sentence were stated by the Court.
2           MR. GOLTZER:  The reason he got the sentence was
3   that the Court evaluated everything in his case after
4   receiving a letter from the Government that was 151 pages
5   long describing extraordinary and what the Government called
6   both "unprecedented crimes and unprecedented cooperation."
7   I mean, that's a matter of public record, Judge.
8           THE COURT:  And that's not all the Court had.  The
9   Court had his testimony here in four trials.  So I had that,
10  you know, the fact is the reason he got the sentence, the
11  reasons are set forth in the Court's statement, and if we're
12  going to throw open, you know, trying to create an
13  impression for the jury as to, well, he got this sentence
14  that's, you know, a mere pittance and now the judge, a judge
15  may give me a sentence based on the same facts and
16  conditions, that is apples and oranges.
17          MR. GOLTZER:  What's important, Judge, is the
18  witness's state of mind, that's what I'm trying to get at.
19          THE COURT:  Yes, you can get at that without going
20  into the sentence that Mr. Vitale got.  I'll think about it.
21          MR. GOLTZER:  I could tell, I could ask the
22  witness whether they knew that Vitale received a sentence
23  less than life.  I mean, I don't have I don't have to go all
24  the way to seven years there are middle grounds, too, Judge.
25  I think, in fairness, I'm not trying to create a false

1  impression at all, that's why I raised it today instead of
2  just opening on it.
3            Now, Gravano, for example, I think everybody
4  knows about Gravano, would the Government feel more
5  comfortable by saying that Vitale got less than life and so
6  did Gravano?
7            MS. MERKL: I think specific references to
8  specific people is just very problematical because, you
9  know, what John Gotti represented and what John Gotti was
10 capable of and the unprecedented historical cooperation that
11 Judge Glasser found in that case was based on his
12 observations about Gravano's testimony, his observations
13 about Gravano's importance.
14           We don't even have a point of reference with
15 regard to all of the reasons why Mr. Gravano received that
16 sentence without asking Judge Glasser which is obviously
17 very problematic.
18           THE COURT: I'll let you know.
19           MR. GOLTZER: Look, there's a bottom line. Let me
20 state for the record the bottom line Judge.
21           The jury needs to know that people get
22 substantial benefits all over the United States for
23 cooperating and these people expect to get them, too.
24           THE COURT: And that has come up and has been
25 cross-examined in every single case in which a cooperator

Colloquy 4431

testified in my courtroom.

MR. GOLTZER: I know that.

THE COURT: Without going into the specifics of what other particular individuals got and why they got it.

MR. GOLTZER: I recall the Gravano came up because that was part of the witness's state of mind. And Vitale getting less than life will be part of the witness's state of mind. I don't need to go beyond that but I need to let them know that Sal Vitale got less than life.

THE COURT: I have your point. Let me think about it.

Anything else?

THE DEFENDANT: Can I talk to my lawyers for a minute?

THE COURT: Sure.

THE DEFENDANT: Just one minute?

THE COURT: Sure.

THE DEFENDANT: Over here, Judge, or in the back?

THE COURT: I'll turn on the white noise.

MR. GOLTZER: That's okay, he's going to whisper in my ear.

(A brief pause in the proceedings was held.)

THE DEFENDANT: Thank you, Judge.

MR. GOLTZER: Actually, Mr. Basciano has a very good idea.

```
 1  UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
 2  ------------------------------------x
    UNITED STATES OF AMERICA,
 3

 4
            versus                              05 CR 60(NGG)
 5
    VINCENT BASCIANO,
 6
                    DEFENDANT.          U.S. Courthouse
 7                                      Brooklyn, New York
    ------------------------------------x
 8                                      April 11, 2011
                                        9:30 a. m.
 9

10

11                    TRANSCRIPT OF TRIAL

12        Before the HONORABLE NICHOLAS GARAUFIS, USDJ

13                        APPEARANCES

14  Representing the Government:   Loretta E. Lynch
                                   United States Attorney
15                                 Eastern District of New York
                                   271 Cadman Plaza East
16                                 Brooklyn, New York 11201
                                   BY:  TARYN MERKL, ESQ.
17                                      JACK DENNEHY, ESQ.
                                        NICOLE ARGENTIERI, ESQ.
18                                      STEPHEN FRANK, ESQ.

19  Representing the Defendant:    GEORGE GOLTZER, ESQ.
                                   RICHARD JASPER, ESQ.
20                                 YING STAFFORD, ESQ.
                                   BETH BOCHNAK, ESQ.
21

22  Reported by:
    Lisa Schmid, CCR, RMR
23  225 Cadman Plaza East
    Brooklyn, New York 11201
24  Phone:  718-613-2644 Fax:   718-613-2379
    Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-aided transcription.
```

```
 1  objection that they made.
 2          MR. GOLTZER:  We just think it goes beyond the
 3  parameters of Your Honor's order, clearly reference to what's
 4  been stricken pursuant to our motions.
 5          THE COURT:  What's the difficulty of leaving it out?
 6          MS. MERKL:  That particular one, Your Honor -- the
 7  two of them are speaking about concerns about cooperating
 8  witnesses and it's important enterprise evidence in the
 9  government's view and the '85 one is easier admittedly to --
10          THE COURT:  I'll listen to it.
11          MS. MERKL:  -- to excerpt.
12          MR. GOLTZER:  The enterprise is not an issue.
13          MS. MERKL:  Well, we still have to prove it.
14          THE COURT:  What's that?
15          MR. GOLTZER:  The enterprise is not being contested.
16          MS. MERKL:  It's the manner which the enterprise
17  operates, Your Honor, is important to the government's case.
18          THE COURT:  All right.  I'll listen to it.
19          Okay.  The defendant has moved for the Court to
20  permit cross-examination of cooperating witnesses about the
21  sentences that Salvatore Vitale, Sammy the Bull Gravino, and
22  other cooperating witnesses have received as a result of
23  cooperating with the government, defendant's motion is denied.
24  The Court finds that such questioning about cooperator's
25  impressions of the benefits of other specific cooperators,
```

1  that other specific cooperators have received, is not
2  essential to effective cross-examination for bias.
3       The Court further finds that such examination is
4  both prejudicial and likely to create confusion. Any
5  probative value such evidence would have is substantially out
6  weighed by the likelihood of prejudice and confusion and thus
7  is barred under Federal Rule of Evidence 403.
8       The defendant may inquire into these cooperating
9  witnesses' biases through a broad range of questions about the
10 benefits they expect to receive without inquiring into what
11 benefits specific named cooperating witnesses received. The
12 same reasons the defense will not be permitted to reference
13 the sentences specific cooperating witnesses have received
14 during their opening statement. The Court declines to rule at
15 this times as to whether this evidence can properly be
16 admitted later at trial.
17      The Court has reviewed defendant's April 6th, 2011
18 renewed motion to compel disclosure of an ex parte affidavit
19 submitted to Magistrate Levy concerning the so-called list and
20 the transcript of ex parte proceedings before the magistrate
21 in connection with the list. In its January 12th, 2011
22 pretrial order the Court denied a motion by the defendant for
23 an order compelling disclosure of these same materials.
24 Defendant argues the changed circumstance justifies
25 reconsideration of that decision, the Court disagrees. The

8214

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA        :      05-CR-060 (S-11)

    -against-                          U.S. Courthouse
                                :      Brooklyn, New York
VINCENT BASCIANO,

        DEFENDANT,              :
                                       May 10, 2011
- - - - - - - - - - - - - - - X       9:30 o'clock a.m.


            TRANSCRIPT OF TRIAL
            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
            UNITED STATES DISTRICT JUDGE and a jury.



APPEARANCES:

For the Government:         LORETTA LYNCH
                            United States Attorney
                            147 Pierrepont Street
                            Brooklyn, New York  11201
                            BY:  TARYN MERKL
                                 JACK DENNEHY
                                 NICOLE ARGENTIERI
                                 STEPHEN FRANK
                            Assistants U.S. Attorney


For the Defendant:          GEORGE GOLTZER, ESQ.
                            RICHARD JASPER, ESQ.
                            YING STAFFORD, ESQ.



Court Reporter:             SHELDON SILVERMAN
                            Official Court Reporter
                            225 Cadman Plaza East
                            Brooklyn, New York 11201
                            (718) 613-2537



Proceedings recorded by mechanical stenography. Transcript
Produced By Computer Aided Transcription.
```

SS     OCR     CM     CRR     CSR

8220

1  reputation. He said no. I did elicit the prior inconsistent
2  statements from Joseph Massino. It was absolutely fair
3  argument. The government is seeking unfair advantage.
4           I'm well aware of my ethical obligations to the
5  court, been an ethical lawyer for 38 years, didn't decide now
6  to change. What's outrage is the government's request.
7           MR. FRANK: I'm operating without a script today.
8  Perhaps -- forgive me if my responses are a little
9  off-the-cuff, but the defense counsel just stated his reason,
10 again, for calling Sal Vitale was to elicit those prior
11 inconsistent statements. That's not what he told the jury in
12 summation. He didn't reference those prior inconsistent
13 statements at all. He only referenced Mr. Vitale's status as
14 free as a bird. The implication of that and the inferences he
15 was asking the jury to draw are absolutely crystal clear and
16 the same goes for the inferences he was asking him to draw
17 about Dominick Cicale. The words were out. The prejudice
18 exists. It needs to be corrected.
19          MR. GOLTZER: If you look at it in context, I was
20 referring to other cooperators in the context of the entire
21 statement. It was fair argument based on the record. In the
22 same way the government told the jury Mr. Basciano was
23 arrested for the murder of Santoro when it was the original
24 intent of this court not to have us go there, but things
25 happen in trials, Judge. I never accused the prosecution of

8221

1  bad faith when their witness blurted that out.  They're making
2  a mountain out of a mole hill.  The jury will not pick up.
3  The prosecution is sensitive.  Free as a bird, he's out, the
4  same way Barbieri is out.  Nobody told this jury what the
5  sentence was.  Nobody disobeyed an order.
6          MS. MERKL:  The latter point is the issue.
7  Mr. Goltzer wants the jury to conclude the government let Sal
8  Vitale out.
9          THE COURT:  To that degree, I don't think there's
10 any problem without saying counsel's argument were contrary to
11 the instructions of this court, you should disregard them, I'm
12 not going to point blame at the defense but I am going to
13 clarify the decision as to what the sentence should be for any
14 of these people is up to the sentencing court regardless of
15 whether they have a 5K letter or not.
16         MR. GOLTZER:  I have no objection to that.
17         THE COURT:  I'll do that.  The rest I'm going to
18 deny.
19         MR. FRANK:  Thank you, your Honor.
20         MR. GOLTZER:  A couple of brief matters?
21         THE COURT:  Just one moment.
22         (Pause.)
23         THE COURT:  I think we put some more language to
24 this count three as to unanimity, as to the theory under which
25 the jury, assuming it finds the defendant guilty of count

8222

1  three, whether it's an aiding and abetting theory or it's a
2  Pinkerton theory, we'll say they have to be unanimous which
3  theory it is.
4          Did you see that?  It's there.  I just wanted to
5  point it out to you.
6          MS. MERKL:  My paralegal is printing.  I don't have
7  that in front of me.
8          THE COURT:  Just one moment.
9          (Pause.)
10         THE COURT:  I'm going to read to you the addition,
11 page 41 of the current draft.
12         As to count three, it states and we've added, there
13 are multiple ways that the government can prove the second
14 element, each of which I will explain to you.  However, I
15 instruct you that in order to convict the defendant of count
16 three, you must unanimously agree on at least one of the
17 possible theories of liability.  It is not sufficient if some
18 of you find that this element has been proved based on one
19 theory and some find it has been proven based on another.  In
20 other words, all 12 of you must agree that the government has
21 proven the same theory or theories beyond a reasonable doubt.
22         Is that all right?
23         MS. MERKL:  Yes.
24         MR. GOLTZER:  No objection.
25         THE COURT:  This is what I'm going to read to the

8223

1  jury about Mr. Vitale. Yesterday defense counsel made some
2  statements in summation concerning the current status of Sal
3  Vitale. You should draw no inferences concerning the sentence
4  Mr. Vitale or any cooperating witness may or may not receive
5  except as will be set forth in my instructions on the law.
6  Those sentences are not within the government's control. They
7  are solely within the discretion of the sentencing court.
8           MR. GOLTZER: I certainly have no objection to that
9  curative instruction. I say that without waiving our prior
10 request that we be permitted to let the jury know what the
11 actual sentence was.
12          THE COURT: I understand that. I wanted to read it
13 to you before I read it to the jury in case you had a problem
14 with the language.
15          MR. GOLTZER: I have no problem with the language.
16 I didn't want this to be a waiver of my prior request.
17          We have one brief request.
18          THE COURT: Go ahead.
19          MR. GOLTZER: Because of an argument the government
20 made yesterday about Pizzolo being murdered on the sneak,
21 there may be confusion as to the necessary purpose and
22 unanimity on the object of the conspiracy to commit the
23 murder. The murder, of course, has to -- the conspiracy and
24 the Vicar statute has as an element that the murder was
25 performed to enhance or maintain Mr. Basciano's position.