UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                              Plaintiffs,                      **MEMORANDUM & ORDER**

                — against —                            10-CR-147 (SLT)

FRANCIS GUERRA, *et al.*,

                              Defendants.
------------------------------------------------------------X
**TOWNES, United States District Judge:**

        Defendant Francis Guerra ("Defendant") moves to dismiss racketeering acts three and four of count one of the instant indictment for pre-indictment delay, requests that his trial be severed from that of Theodore and Michael Persico to avoid prejudice, and demands a bill of particulars, additional discovery and the disclosure of additional materials in advance of trial. Further, he seeks leave to join the motions of his co-defendants "to the extent applicable." For the reasons stated below, the motions are denied.

## BACKGROUND

        Racketeering act three alleges a conspiracy to murder and the actual murder of Joseph Scopo. (Declaration of Gerald McMahon ("Decl.") at ¶ 4.) The conspiracy allegedly occurred between June 20, 1991 and October 20, 1993, and the murder occurred on October 20, 1993. (*Id.* at ¶¶ 5-6.) Defendant alleges that at least three cooperating witnesses told the government that Guerra was involved in the murder no later than 1999. (*Id.* at ¶ 7.) However, Defendant was not charged with murder until August 2011, creating a pre-indictment delay of at least twelve years – during which at least two eyewitnesses have died. (*Id.* at ¶¶ 8-9.) Racketeering act four alleges a conspiracy to murder and the actual murder of Michael Devine. (*Id.* at ¶ 10.) The conspiracy to murder and the murder itself are alleged to have occurred on or around

January 24, 1992. (Decl. at ¶ 11.) Defendant alleges that the government had information that Guerra was involved as early as 1995, but he was not charged until 17 years later. (*Id.* at ¶¶ 12-13.) Similar to the Scopo murder, Defendant alleges that "potential witnesses have died or disappeared and recollections have dimmed with the lengthy passage of time." (*Id.* at ¶ 14.)

The primary government witness regarding the Scopo murder is Anthony Russo ("Russo"), who was arrested for the murder and is a cooperating witness. (*Id.* at ¶ 17.) In at least thirteen recordings, Russo discussed his role and the role of Defendant in the murder. (*Id.* at ¶ 18.) However, Russo never mentioned that Theodore or Michael Persico ("Persicos") had any involvement in it. (*Id.* at ¶ 19.) According to Defendant, Russo is now expected to testify at trial that the Persicos aided and abetted the homicide. (Defendant Memo at 4.) Defendant argues that, although the recordings would not be admissible against Guerra unless he challenged Russo's trial testimony, the Persicos intend to assert their right to challenge Russo on cross-examination and use the recordings to impeach Russo, which would cause prejudice to Defendant's case. (Decl. at ¶¶ 20-22.) For this reason, Defendant requests that his trial be severed and the charges against him added to the *Russo* indictment (*United States v. Andrew Russo, et al.*, 11 cr 30 (KAM)) "since the Scopo murder is Racketeering Act One of Count One" of the *Russo* indictment. (*Id.* at ¶¶ 23-24.)

Defendant also argues that he should be told "who the government – or, more accurately, the grand jury – alleges were his co-conspirators" in the two murders, since the conspiracies occurred twenty years ago. (*Id.* at ¶ 26.) Defendant notes that he has moved, along with the Persicos, for the production of the NYPD homicide file regarding the Scopo murder. (*Id.* at ¶ 27.) He argues that the Devine homicide file is more necessary given the fact that the Devine murder is a year older than the Scopo murder. (*Id.*)

## DISCUSSION

### *Motion to Dismiss Racketeering Acts Three and Four Due to Pre-Indictment Delay*

Analysis of the law regarding preindictment delay typically begins with examination of two Supreme Court cases from the 1970's: *United States v. Marion*, 404 U.S. 307 (1971), and *United States v. Lovasco*, 431 U.S. 783 (1977). In *Marion*, the Supreme Court "considered the significance, for constitutional purposes, of a lengthy preindictment delay." *Lovasco*, 431 U.S. at 788. The Court concluded that only "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections" of the Sixth Amendment, *Marion*, 404 U.S. at 320, and that statutes of limitations provide "'the primary guarantee against bringing overly stale criminal charges.'" *Id.*, at 322 (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)). The *Marion* Court also acknowledged that the Due Process Clause has "a limited role to play in protecting against oppressive delay." *Lovasco*, 431 U.S. at 789.

The *Marion* Court did not "determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution." *Marion*, 404 U.S. at 324. However, *Marion* made it "clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco*, 431 U.S. at 790. In addition, the Court noted:

> [T]he Government concedes that the Due Process Clause of the
> Fifth Amendment would require dismissal of the indictment if it
> were shown at trial that the pre-indictment delay in this case
> caused substantial prejudice to appellees' rights to a fair trial and
> that the delay was an intentional device to gain tactical advantage
> over the accused.

Marion, 404 U.S. at 324.

Six years later, in *Lovasco*, the Supreme Court again "consider[ed] the circumstances in which the Constitution requires that an indictment be dismissed because of delay between the commission of an offense and the initiation of prosecution." *Id.* at 784. The Court held, *inter alia*, that "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment" or "to impose on law enforcement officials . . . 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.'" *Id.* at 790 (quoting *Rochin v. California*, 342 U.S. 165, 170 (1952)). The Court identified the relevant inquiry as "whether the action complained of here, compelling respondent to stand trial after the Government delayed indictment to investigate further violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Id.* (internal quotations and citations omitted).

Like the *Marion* Court, the *Lovasco* Court declined to "determine in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions." *Id.* at 796. Rather, the *Lovasco* Court left to lower courts "the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases." *Id.* at 797. However, in deciding the case before it, the Supreme Court provided some concrete guidance. First, the Court held that it was error to dismiss an indictment upon finding that the Government had all the information relating to the charged offense 17 months before the case was presented to the grand jury, that the delay had "not been explained or justified" and was "unnecessary and unreasonable," and that as a result of the delay the defendant was prejudiced by the death of a material witness. *Id.* at 798. In so doing, the Court refused to rule that Due Process requires the government to file charges promptly after assembling sufficient evidence to prove guilt beyond a

4

reasonable doubt, holding instead that "to prosecute a defendant following good faith investigative delay...does not deprive him of due process even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 783. The Court stated:

> [I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S., at 324 . . . precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10 . . . (1959). This the Due Process Clause does not require.

*Id.* at 795-96 (footnote omitted). Moreover, in a footnote, the Court stated:

> In Marion we noted with approval that the Government conceded that a "tactical" delay would violate the Due Process Clause. The Government renews that concession here . . . and expands it somewhat by stating: "A due process violation might also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense . . . ."

*Id.* at 795, n. 17.

While the Supreme Court has not re-visited the issue of when preindictment delay constitutes a Due Process violation since 1977, the Court has mentioned *Marion* and *Lovasco* on several occasions. However, the Court's characterization of these two cases has varied. For example, in *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 563 (1983), the Court characterized *Lovasco* as articulating that Due Process claims "can prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in

reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." In *United States v. Gouveia*, 467 U.S. 180, 192 (1984), the Court cited *Marion* and *Lovasco* for the proposition that "the Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." Similarly, in *Doggett v. United States*, 505 U.S. 647, 666 (1992), the Court stated that Marion "explained" that the Due Process Clause "would require dismissal of [an] indictment if it were shown at trial that [a] delay . . . caused substantial prejudice to [a defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused."

The Courts of Appeals, too, have adopted various standards. Justice White noted this in his 1988 dissent from a decision to deny certiorari in a Second Circuit case. The case addressed the correct test for determining if prosecutorial preindictment delay amounts to a violation of the Due Process Clause of the Fifth Amendment:

> The Second Circuit held that there was no due process violation because petitioner "made no showing of an improper prosecutorial motive." [United States v. Hoo,] 825 F.2d 667, 671 (1987). Other Circuits have similarly required a showing of prosecutorial misconduct designed to obtain a tactical advantage over the defendant or to advance some other impermissible purpose in order to establish a due process violation. *United States v. Ismaili*, 828 F.2d 153, 166 (CA3 1987); *United States v. Lebron-Gonzalez*, 816 F.2d 823, 831 (CA1), *cert. denied*, 484 U.S. 843, and 857 . . . (1987); *United States v. Caporale*, 806 F.2d 1487, 1514 (CA11 1986), *cert. denied*, 482 U.S. 917, and 483 U.S. 1021 . . . (1987); *United States v. Jenkins*, 701 F.2d 850, 854-855 (CA10 1983). Two Circuits, however, have concluded that intentional misconduct is not the *sine qua non* for a due process violation from prosecutorial preindictment delay, and instead they hold that the proper inquiry is to balance the prejudice to the defendant against the Government's justification for delay. *United States v. Valentine*, 783 F.2d 1413, 1416 (CA9 1986); *United States v.*

> *Automated Medical Laboratories, Inc.*, 770 F.2d 399, 403-404 (CA4 1985). Exemplifying the significant disagreement in the lower courts over the proper test, panels in the Fifth and Seventh Circuits have acknowledged conflicts between decisions from their own Circuits on this issue. *Dickerson v. Louisiana*, 816 F.2d 220, 229, n. 16 (CA5), *cert. denied*, 484 U.S. 956 . . . (1987); *United States v. Hollins*, 811 F.2d 384, 387-388 (CA7 1987).

*Hoo v. United States*, 484 U.S. 1035, 1035-36 (1988).

In the Second Circuit, too, there has been some variation in the standards adopted by different panels. For example, while most panels have held that "actual prejudice" is one of the two elements necessary to make out a Due Process violation, *see, e.g., Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010); *Denis v. Upstate Correctional Facility*, 361 F.3d 759, 760 (2d Cir. 2004), some panels have indicated that the prejudice must be "substantial." *See, e.g., United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (cited with approval in *United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009)); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir. 1987). Still other panels have failed to qualify the degree of prejudice required. *See, e.g., United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990); *United States v. Birney*, 686 F.2d 102, 105 (2d Cir. 1982); *United States v. Rubin*, 609 F.2d 51, 66 (2d Cir. 1979).

Similarly, while all panels agree that something more than prejudice is required, the panels do not entirely agree on this second element. Many panels have held that a defendant must show that "the delay was an intentional device to gain [a] tactical advantage over the accused." *See, e.g., Denis*, 361 F.3d at 760; *Cornielle*, 171 F.3d at 752. Other panels state that the defendant must show that the delay was "so unfair as to violate fundamental concepts of fair play and decency, such as would occur if the prosecutor deliberately used the delay to achieve a substantial tactical advantage." *Scarpa*, 913 F.2d at 1014 (quoting *Rubin*, 609 F.2d at 66). Yet other panels have held that a defendant must show "unjustifiable government conduct."

7

*United States v. Ruggiero*, 726 F.2d 913, 925 (2d Cir. 1984); *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979), or that "the prosecution's reasons for the delay were improper." *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (citing *United States v. Langella*, 776 F.2d 1078, 1083 (2d Cir.1985), while one panel has held that a defendant must show "unjustifiable governmental conduct, such as deliberate delay to achieve a substantial tactical advantage." *Ruggiero*, 726 F.2d at 925.

Defendant argues that he must show "substantial prejudice" and that "the delay was an intentional device to gain [a] tactical advantage over the accused." (Defendant's Memo at 2.) Similarly, the government argues that Defendant must show actual and substantial prejudice for the first element, and, for the second element, that "the government intentionally caused the delay in order to obtain a tactical advantage." (Government Memo at 22.)

*Prejudice*

This Court need not determine whether the first element requires proof of "actual" or "substantial" prejudice, however, because Defendant has not adduced any proof of prejudice. As the Second Circuit has observed:

> [P]roof of prejudice must be definite and not speculative . . . . To sustain her burden of proof, the defendant must demonstrate how (the loss of evidence) is prejudicial to her . . . . Without definite proof as to this essential element no due process claim has been stated.

*Birney*, 686 F.2d at 105-06 (internal quotation and citations omitted; parenthetical in original). In this case, the scope and nature of the evidence which was allegedly lost as a result of preindictment delay is uncertain and cannot be shown to have prejudiced Defendant.

Regarding the Scopo murder, Defendant asserts that two eyewitnesses to the crime have died during the twelve-year delay. (Defendant's Memo at 3.) Defendant presents this Court

8

with only this vague and speculative prejudicial effect. Defendant has not specified who the eyewitnesses were. Further, it is uncertain that they would have been willing to testify or what evidence they would have provided. With respect to the Devine murder, Defendant argues that, as a result of the seventeen-year delay, potential witnesses have since died or disappeared, recollections have dimmed, and the defense is now having difficulty locating witnesses. (Decl. at ¶¶ 13-14; Defendant's Memo at 3.) Again, Defendant can only speculate on what evidence was actually lost. Defendant does not identify the witnesses who have died or disappeared, or what evidence cannot be presented because it is now lost. Defendant cannot provide definite evidence of prejudice by merely stating that unidentified people may have known and testified to unknown and unspecified evidence. Accordingly, this Court does not find that Defendant has – or could – establish that the evidence lost as a result of the delay prejudiced him.

### *Government Misconduct*

To satisfy the second element of the Due Process claim, the defendant must prove that the government either acted deliberately to secure an advantage or recklessly in disregard of the delay's probable prejudicial impact upon the defendant's ability to defend against the charges. This Court notes that the Second Circuit has repeatedly referred to the "heavy burden" a defendant faces in having to prove both elements. *See, e.g., Scarpa*, 913 F.2d at 1014; *Cornielle*, 171 F.3d at 752; *Hoo*, 825 F.2d at 671.

Defendant has not met this burden. Here, the government provides evidence of a legitimate delay – the existence of a cooperating witness as to both murders who only recently became available (Government Memo at 28-30) – and Defendant has not produced any controverting evidence. Defendant's argument that the government acted to secure a tactical advantage is based only on the allegation that "FBI agents tried to use the threat of Scopo/Devine

charges to coerce Guerra into becoming a government cooperating witness." (Defendant's Memo at 3.) The fact that Defendant was not charged after refusing to cooperate suggests that the real reason for delay was the need to gather further evidence. Accordingly, Defendant's position aligns with the government's assertion. Indeed, the *Lovasco* Court reasoned that requiring immediate prosecution once sufficient evidence is developed to obtain a conviction might "pressure prosecutors into resolving doubtful cases in favor of early and possibly unwarranted prosecutions." *Lovasco*, 431 U.S. at 793.

Since this Court finds that Defendant has not proved either of the elements necessary to establish a Due Process violation, Defendant's motion to dismiss Racketeering Acts Three and Four on the grounds of preindictment delay is denied. However, this denial is without prejudice to renewing this motion if facts adduced at trial provide Defendant with proof of prejudice and government misconduct.

*Severance*

Defendant urges this Court to exercise its discretion under Fed. R. Crim. P. 14 to sever his trial from that of his co-defendants. Rule 14(a) authorizes severance "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." The decision regarding whether to grant or deny a severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir.1989). However, since joint trials "play a vital role in the criminal justice system" because they both promote efficiency and avoid the possibility of inconsistent verdicts, the Supreme Court has expressed "a preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal

conspiracy . . . ." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Notably, a defendant under Rule 14 bears an "'extremely difficult burden' of proving...that the prejudice would be so great as to deprive him of his right to a fair trial." *United States v. Bellomo*, 954 F.Supp. 630, 649 (S.D.N.Y. 1997) (quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989).

Defendant moves to sever on the basis of antagonistic defenses. The Supreme Court has noted that "[m]utually antagonistic defenses are not prejudicial *per se.*" *Zafiro v. United States*, 506 U.S. 534, 538; *see also United States v. Carpentier*, 689 F.2d 21, 27-28 (2d Cir. 1982) ("A simple showing of some antagonism between defendants' theories of defense does not require severance."). Rather, the existence of antagonism between defendants' defenses rises to the level of prejudice requiring severance only when the core of one defendant's defense conflicts with the defense of other co-defendants. *Grant v. Hoke*, 921 F.2d 28, 32 (2d Cir. 1990). Substantial prejudice results from antagonistic defenses "only if it can be said that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.'" *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) (quoting *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984).

Here, Guerra argues that a cooperating witness, Russo, participated in 13 or more consensual recordings wherein he discussed his potential liability, as well as that of Guerra, for the Scopo murder. According to Guerra, the witness did not name Michael Persico or Theodore Persico, Jr., in any of those tapes as participants in the alleged murder. Both defendants have notified Guerra that they intend to introduce all 13 recordings to impeach Russo. Guerra argues that those recorded statements by the cooperating witness would not be admissible against him unless he challenged the witness' anticipated trial testimony as a recent fabrication. Guerra, however, has not articulated a specific manner in which his defense is, at its core, at odds with

11

the defenses of a co-defendant, thereby justifying severance. Additionally, if made during and in furtherance of the conspiracy, statements in the recordings are admissible, on motion of the Government, against co-conspirators, even at a separate trial. *See* Fed. R. Evid. 801(d)(2)(E). This includes a separate trial of Guerra, if he is proved to be a co-conspirator. Further, this Court can conceive of no circumstance under which co-defendants would be permitted to introduce thirteen recordings simply to establish that they were not mentioned therein. This is especially true if the witness admits that he discussed the alleged Scopo murder on the recordings without including any mention of the two co-defendants. For the foregoing reasons, the Court denies Defendant's motion for severance.

## *Bill of Particulars and Additional Discovery*

Defendant requests a bill of particulars identifying the other, unnamed co-conspirators with whom Defendant allegedly conspired to commit murder. However, the government has no obligation to provide the names of unindicted co-conspirators as long as it has provided Defendant with sufficient information about the charges he faces. *U.S. v. Torres*, 901 F.2d 205, 233-34 (2d Cir. 1990) *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). Additionally, "[w]hether to grant a bill of particulars rests within the sound discretion of the district court." *Id.* at 234 (citing *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). The indictment adequately informs Defendant of the charges pending against him and he is aware of the specific acts of which he is accused. Therefore, Defendant's request for a bill of particulars identifying unnamed, alleged co-conspirators is denied.

Additionally, Defendant requests the NYPD homicide files on the Scopo and Devine murders. The government reports that since Defendant's motion was filed, the government has provided Defendant with the remaining materials from the NYPD homicide files on these

12

murders. (Government Memo at 59.) As such, Defendant's request for NYPD homicide files is moot.

## *Brady/Giglio and Trial Materials*

Defendant also seeks an order compelling the government to produce all *Brady* and *Giglio* material thirty days before trial, and to disclose all Jencks Act material seven days before trial. In addition, Defendant seeks (1) Rule 404(b) notice regarding the "other crimes" evidence that the government will seek to introduce if Defendant takes the stand, (2) a list identifying the recordings that the government will play at trial, with transcripts, and (3) a list of trial exhibits. In response, the government effectively argues that Defendant's application is premature and/or unnecessary. The government represents that it has "complied with its *Brady* obligations to date and will continue to do so." (Government Memo at 60.) Further, the government is aware that its "obligation is to produce these materials in time for their effective use at trial, and it will do so in ample time." (*Id.*)

The government's assurances in its opposition papers satisfy the Court that the government has a firm grasp on its obligations under *Brady* and *Giglio*. This Court trusts that the government is fully aware that such materials "must be disclosed 'in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial.'" *United States v. Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008) (quoting *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007)). In addition, the Court recognizes that "[i]t is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." *Id.* at 180-81 (quoting *United States v. Leka*, 257 F.3d 89, 100 (2d Cir. 2001)). With regards to all of Defendant's other

requests, the government informs the Court that there is a disclosure schedule to which both sides agree. (Government Memo at 60-61.) Accordingly, there is no need for this Court to take any action in response to Defendant's discovery requests at this juncture.

*Joining Co-Defendants' Motions*

Finally, "Defendant Guerra seeks leave to join the motions of [his] co-defendants where applicable." (Defendant's Memo at 11.) However this argument consists only of a point heading, which is quoted verbatim above. This Court declines to speculate regarding the motions to which Defendant is referring. Accordingly, unless Defendant identifies the portions of his co-defendants' motions that are applicable to him, this application is not justiciable.

## CONCLUSION

For the reasons set forth above, Defendant Francis Guerra's pretrial motions are denied.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated: May 22, 2012
Brooklyn, New York