

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NMA/RJN/AL
F.#2009R00195

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

June 10, 2012

By ECF

The Honorable Sandra L. Townes
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Francis Guerra
           Criminal Docket No. 10-147 (S-4)(SLT)

Dear Judge Townes:

      The government respectfully submits this response to the defendant's motion dated June 10, 2012, in which the defendant requested a declaration of mistrial, the selection of a new, non-anonymous jury, and the preclusion of certain evidence. (Docket Entry No. 555 ("Def.'s Mot.").)  For the reasons set forth below, the defendant's motion should be denied in its entirety.

I.   The Court Should Not Declare a Mistrial or Select a New, Non-Anonymous Jury

      The defendant moves for a mistrial, the dismissal of the existing panel of 45 jurors, and the selection of a new, non-anonymous jury. (Def.'s Mot. at 1-2.)  In support, he argues that two of his co-defendants, Michael Persico and Theodore Persico, Jr., pled guilty after jury selection began and the co-defendants were introduced to the jury. (Id.)  The defendant argues that the co-defendants' guilty pleas "create[] an unfair and highly prejudicial impression that the charges in the indictment have an unquestioned validity." (Id. at 1.)  The defendant is wrong.

      The Second Circuit has squarely addressed this situation and rejected the defendant's argument.  In <u>United States v. Gibbons</u>, 602 F.2d 1044 (2d Cir. 1979), the Circuit considered an appeal by a defendant who argued that he had been

prejudiced because two of his co-defendants pled guilty in the middle of trial. <u>Gibbons</u> at 1048. After each co-defendant pled guilty, the district court advised the jurors, in substance, that the co-defendant "was no longer a part of the proceedings and that they were not to speculate on why he was no longer present." <u>Id.</u> Then, in its jury charge, the district court advised the jurors as follows:

> As I have indicated to you earlier, this case has been disposed of as to the defendants [who pled guilty]. You are not to be concerned with them, nor should you speculate as to the reasons why they are no longer on trial before you. The disposition of the case as to them should not in any way affect or influence your verdict with respect to the remaining two defendants. You must base your verdict as to each of them solely on the evidence against them, or the lack of evidence.

<u>Id.</u>

Although the Second Circuit did not fully endorse this instruction, it held that "[t]he attacks on [the district court's] conduct of the trial are rejected, since the cited statements," which included other statements challenged on appeal, "even cumulated, did not exceed the bounds of propriety." <u>Id.</u> The Circuit noted, however, that, with respect to the co-defendants' guilty pleas:

> It would be better practice to avoid reference to the circumstance that a codefendant has pleaded guilty or that his case has been "disposed of." So far as reversible error is concerned, however, we have not reversed even where the judge specifically told the jury that codefendants had pleaded guilty but accompanied his statement with appropriate cautionary instructions such as those employed here.

<u>Id.</u> (citing <u>United States v. Toliver</u>, 541 F.2d 958, 967 (2d Cir. 1976); <u>United States v. Kelly</u>, 349 F.2d 720, 767-68 (2d Cir. 1965)).

In light of this precedent, it is clear that the recent guilty pleas of the two co-defendants are no basis for a mistrial or the empanelment of a new jury. In order to comport with <u>Gibbons</u>, however, the government respectfully requests that the Court charge the jury as follows:

> You are not to be concerned with the absence of any co-defendants, nor should you speculate as to the reasons why they are not on trial before you. Their absence should not in any way affect or influence your verdict with respect to the remaining defendant. You must base your verdict as to the remaining defendant solely on the evidence against him, or the lack of evidence.

<u>See generally</u> <u>Gibbons</u>, 602 F.2d at 1048; <u>see also</u> <u>United States v. Valencia</u>, 1996 WL 49257, at *4-5 (2d Cir. 1996) ("Here, the district court followed the 'better practice' we referred to in <u>Gibbons</u>, stating quite simply that [a co-defendant's] 'absence is not something that you should give any consideration or concern to.' Having given this instruction, both immediately after [the co-defendant's] plea and after the jury inquired about [the co-defendant's] absence during its deliberations, it was within the court's discretion to deny [the remaining trial defendant's] motion for a mistrial on this ground.") (unpublished opinion); <u>United States v. Ramirez</u>, 973 F.2d 102, 104-05 (2d Cir. 1992) ("[W]hen a jury has been informed that a codefendant has pleaded guilty to a crime charged against the defendant on trial, the trial judge should instruct the jury that they may not consider that guilty plea as evidence of the defendant's guilt.")

The defendant also argues that the Court should select a new, non-anonymous jury because the government's motion for an anonymous jury "was based on the fact that the son (Michael) and nephew (Theodore) of the alleged Boss of the Colombo Crime Family, Carmine 'Junior' Persico, were defendants in the case." (Def.'s Mot. at 2.) That is not true. In moving for an anonymous jury, the government relied on, among other things, the defendant's participation in the murder of Joseph Scopo, who was murdered to obtain control over the Colombo family, and the defendant's participation in the murder of Michael Devine, who was murdered because he dated the wife of a powerful member of the Colombo family. (Docket Entry No. 379 at 8.) The government further relied on the defendant's position of influence within the Colombo family, which is based in part on his participation in those murders (<u>id.</u> at 10-11), and on the Colombo family's decades-long history of tampering with juries (<u>id.</u> at 11-17). In addition, the government relied on the media attention that this

case has attracted and is likely to continue to attract. (Id. at 22-24.)

Furthermore, and more importantly, in granting the government's motion for an anonymous jury, the Court recited these same factors. In particular, the Court noted that Guerra was charged with murdering Scopo and Devine as part of a racketeering conspiracy, that he is an associate within the Colombo crime family, and that the government has adduced evidence that he is influential with the Colombo family and has the ability to convince members of the Colombo family to commit crimes on his behalf. (Docket Entry No. 418 at 3, 7, 9.) In addition, the Court took "judicial notice of cases documenting the Colombo Family's previous attempts to interfere with the judicial process." (Id. at 8.) The Court further noted that an investigator for the defendant falsely told an alleged extortion victim that the defendant was not in custody, thereby causing that victim to fear for his safety and to assert his Fifth Amendment privilege when contacted by the government. (Id. at 9.) Finally, the Court noted that the trial of this case is likely to attract media attention, not only because at the time it involved two relatives of the boss of the Colombo family, but also because it involves two murders. (Id. at 10-11.)

In sum, the government's motion for an anonymous jury, and the Court's decision to grant that motion, are amply supported by facts that apply even after the co-defendants have pled guilty. There is therefore no reason to reconsider that decision or to empanel a new, non-anonymous jury

## II. The Photographs of Michael Devine Should Be Admitted

The defendant moves to preclude the government from introducing certain photographs of murder victim Michael Devine. (Def.'s Mot. at 2-3.) That motion should be denied because the photographs are relevant and not unduly prejudicial.

### A. Background

On January 24, 1992, Michael Devine's dead body was found in his car, parked in the basement garage of his building on Staten Island. Devine had been shot seven times -- four times in the head, once in his chest, and twice in the area of his groin. After his body was discovered, photographs were taken by the Crime Scene Unit of the New York City Police Department, including the photograph marked as Government Exhibit ("GX") 55(d). In addition, photographs were taken the following day in connection with an autopsy conducted by the Office of the Chief

4

Medical Examiner of New York City, including the photographs marks as GX 53(a)-(c). The defendant now moves to preclude GX 55(d) and 53(a)-(c), arguing that they are irrelevant and excessively prejudicial.

As an initial matter, the government has decided not to introduce GX 55(d). However, the defendant's motion as to GX 53(a)-(c) should be denied.

B. <u>Applicable Law</u>

Rule 401 of the Federal Rules of Evidence ("Rule 401") defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 of the Federal Rules of Evidence ("Rule 403") provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

It is well established that photographs of a deceased person are customarily admissible so long as they have some probative value and are not offered solely to inflame the prejudices of the jury. <u>See</u>, e.g., <u>United States v. Pepin</u>, 514 F.3d 193, 208 (2d Cir. 2008) (holding that the jury must be permitted, at the guilt phase in a capital case, to receive evidence of dismemberment of victims' bodies for which defendant faced murder charges); <u>United States v. Salameh</u>, 152 F.3d 88, 123 (2d Cir. 1998) ("Probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact."); <u>United States v. Rezaq</u>, 134 F.3d 1121, 1137 (D.C. Cir. 1998) (government allowed to place several enlarged autopsy photographs on an easel beside jury box to prove fact of death and cause); <u>United States v. Frappier</u>, 807 F.2d 257, 262 (1st Cir. 1986) (autopsy pictures "were not egregiously shocking; most if not all of them bore reference to medical testimony and corroborated [witness's] account of the murder"); <u>Kuntzelman v. Black</u>, 774 F.2d 291, 292 (8th Cir. 1985) (admission of crime scene photographs at a homicide trial is error only if the photographs are not even "arguably relevant and probative"); <u>United States v. Brady</u>, 579 F.2d 1121, 1129 (9th Cir. 1978) (only on rare occasions when the evidence in question "is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury" should it not be received in evidence); <u>United States v. Naranjo</u>, 710 F.2d 1465,

1469 (10th Cir. 1983) ("gruesomeness alone does not make photographs inadmissible").

Following this well settled law, the "Second Circuit has made clear that the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible." United States v. Salim, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) (citing United States v. Velazquez, 246 F.3d 204, 210-11 (2d Cir. 2001)).  For instance, the Second Circuit affirmed the admissibility of "graphic depictions of the corpses" from the 1993 World Trade Center bombing, including a photograph of a "clearly pregnant" victim's body lying on a stretcher.  Salameh, 152 F.3d at 122.  In determining that such graphic depictions are properly admissible, the Second Circuit reasoned that "[t]here is no doubt that the testimony and photographs of the victims were shocking, and a significant amount of such evidence was admitted.  Nevertheless, . . . the evidence had substantial probative value."  Id. at 123; Rivers v. United States, 270 F.2d 435, 439 (9th Cir. 1959) ("The persistent assertion in criminal cases that the jury should not be permitted the benefit of relevant evidence because it is thought to be 'gruesome' constitutes, in effect, an attack upon the entire jury system.  If a jury is incapable of performing its function without being improperly influenced by evidence having probative force, then the jury system is a failure.  It is not a failure.  Long experience convinces us of the ability and willingness of citizens called for jury duty to perform that duty with fidelity.").

   C.   Analysis

In this case, a select number of autopsy photographs in connection with the murder of Michael Devine will be used to assist the jury in understanding the testimony of the medical examiner and to show that the manner in which Devine was murdered was consistent with the defendant's admission to a cooperating witness.  These are legitimate purposes for which victim photographs are routinely admitted.  See, e.g., United States v. Ingle, 157 F.3d 1147, 1153 (8th Cir. 1998) (holding that district court did not abuse its discretion in admitting crime scene and autopsy photographs because they were admitted "not only to show how the victim died, but also to corroborate the testimony of [witnesses], . . . and to assist the jury in understanding the medical examiner's testimony"); United States v. Greatwalker, 356 F.3d 908, 912-13 (8th Cir. 2004) (autopsy photographs admissible "to corroborate other evidence").

A medical examiner will testify that Devine suffered from seven gunshot wounds -- four to the head, one to the chest

6

and three to the area of his groin.  He will further testify that the shots to the head caused Devine's death.  The photograph marked as GX 53(a) depicts gunshot wounds to Devine's head.  The photograph marked as GX 53(b) depicts a gunshot wound to Devine's chest.  The photograph marked as GX 53(c) depicts gunshot wounds to the area of Devine's groin.  Therefore, GX 53(a)-(c) corroborate and illustrate the findings of the medical examiner, and are relevant and not impermissibly prejudicial.

In addition, a cooperating witness will testify that the defendant admitted to him that he had participated in the Devine murder.  Among other admissions, the defendant told this cooperating witness, in substance, that Devine was shot in the groin in order to send a message.  The photograph marked as GX 53(c) corroborates this testimony because it depicts gunshots wounds to the area of Devine's groin.

The defendant writes that he "will not be contesting the identity of Mr. Devine, the cause of his death, or the nature and extent of his injuries."  (Def.'s Mot. at 2.)  This does not render the photographs any less relevant.  The Second Circuit has expressly held that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it."  Salameh, 152 F.3d at 122 (quoting Old Chief v. United States, 519 U.S. 172, 187-88 (1997)) (citation omitted).  In other words, "the Government generally has a right to present evidence of a fact that a defendant would prefer to admit, so as to establish the 'human significance' of the fact and 'to implicate the law's moral underpinnings.'" Velazquez, 246 F.3d at 211 (quoting Old Chief, 519 U.S. at 187-88); see also United States v. Gantzer, 810 F.2d 349, 351 (2d Cir. 1987) (a "party is not obliged to accept an adversary's 'judicial admission' in lieu of proving the fact . . . particularly in the context of a criminal prosecution where the accused seeks to stipulate to an element of the crime charged"); 9 Wigmore, Evidence § 2591 at 824 (Cadbourn Rev. 1981) ("a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence").

The Supreme Court has provided a compelling rationale for permitting parties to present all the evidence they possess, including photographs, rather than simply relying on admissions:

> Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out

7

> conscientiously for acquittal. When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.
>
> But there is something even more to the prosecution's interest in resisting efforts to replace the evidence of its choice with admissions and stipulations, for beyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. . . . A prosecutor who fails to produce [an essential piece of evidence], or some good reason for his failure, has something to be concerned about. If jurors' expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party. Expectations may also arise in jurors' minds simply from the experience of a trial itself. If suddenly the prosecution presents some occurrence . . . by announcing a stipulation or admission[ ] the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing.

Old Chief, 519 U.S. at 188 (quotation marks, bracketed text, citation and footnote omitted).

\*   \*   \*

The autopsy photographs of Michael Devine that the defendant seeks to preclude are relevant and not substantially outweighed by a danger of unfair prejudice. Accordingly, the government should be permitted to offer them to establish the cause of Devine's death, as well as to corroborate and illustrate the testimony of the medical examiner and to corroborate the testimony of a cooperating witness.

III. <u>The Business Card of Mathew J. Mari Should Be Admitted</u>

The defendant has moved to preclude the business card of Mathew J. Mari, one of the defendant's attorneys, arguing that it has no probative value, would confuse the jury, and would prejudice the defendant. The defendant's motion should be denied.

As the government explained in a <u>Curcio</u> letter filed on October 15, 2011, Mr. Mari formerly represented a cooperating witness who is expected to testify against the defendant. (Docket Entry No. 341 at 2.) In 2010, the defendant and the cooperating witness together met with Mr. Mari in anticipation of their eventual arrest for the murder of Joseph Scopo. (<u>Id.</u>)

The cooperating witness is expected to testify to this effect, and to explain that he and the defendant were motivated to see Mr. Mari because they believe that a Colombo family associate who had previously asked each of them about the Scopo murder was attempting to cooperate with the government.[1]

The business card that the defendant now seeks to preclude was in the cooperating witness's possession when he was arrested in January 2011, before he decided to cooperate with the government. It therefore corroborates the cooperating witness's testimony that he and the defendant met with Mr. Mari in 2010. That testimony and business card are relevant because they tend to make facts of consequence -- whether the defendant participated in the Scopo murder, and whether he did so with the cooperating witness -- more probable than they would otherwise be. Fed. R. Evid. 401. Furthermore, there is no risk that this testimony or the business card will confuse the jury, as the defendant argues, and the defendant offers no basis to believe otherwise. Finally, neither the testimony nor the business card will lead to impermissible prejudice, <u>i.e.</u>, "prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found." <u>United States v. Starnes</u>, 583 F.3d 196, 215 (3d Cir. 2009).

---

[1] The cooperating witness will not testify about what was actually said during the meeting with Mr. Mari, nor has he advised the government of what was actually said during that meeting.

IV.  **The Defendant's Prior Conviction and Incarceration Should Be Admitted**

The defendant has moved to preclude the introduction of his 2000 conviction and subsequent incarceration, arguing that they would constitute impermissible propensity evidence. (Def.'s Mot. at 3.)  This motion should be denied, because the defendant's conviction and incarceration are not propensity evidence, but rather highly probative evidence of his participation in the Scopo murder.

In general, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, it is well established that "'evidence of uncharged criminal activity is not considered other crimes evidence under Rule 404(b) . . . if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)); see also United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (same).

The defendant's 2000 conviction and subsequent incarceration are both inextricably intertwined with the evidence regarding the Scopo murder and necessary to complete the story of that murder, and are therefore admissible and outside the purview of Rule 404.

In 2000, the defendant and a cooperating witness were arrested for extortion, and each of them ultimately pled guilty and served a term of imprisonment.  The cooperating witness is expected to testify that after he and the defendant were sentenced on their 2000 criminal case, they were housed separately in different federal institutions.  The cooperating witness was originally housed with another Colombo family associate, who asked the cooperating witness about his participation in the Scopo murder.  At the time, the cooperating witness believed the Colombo family associate was considering cooperating with the government and was asking him questions about the Scopo murder to aid in his cooperation.

The cooperating witness is further expected to testify that he later learned that the associate would be moved to the facility in which the defendant was housed.  After learning this,

the cooperating witness sent a coded message to the defendant, warning him not to discuss the Scopo murder with the associate.

The cooperating witness is further expected to testify that, upon the cooperating witness's release from prison, he immediately visited the defendant because he was concerned that the defendant might have disclosed their joint participation in the Scopo murder to the associate. When the cooperating witness met the defendant, the defendant acknowledged that the associate had asked him about the Scopo murder, and the defendant stated the he had given the associate a false alibi.

This set of facts is highly relevant to the Scopo murder because the defendant recently provided notice to the government that he intends to rely on the same false alibi at trial that he told the cooperating witness he gave to the associate. The government respectfully submits that this evidence is direct evidence of the defendant's participation in the charged crime, as well as necessary to rebut his alleged alibi, and that it would be difficult or impossible to present this evidence without admitting the defendant's 2000 conviction and subsequent incarceration.

## CONCLUSION

For the foregoing reasons, the government respectfully asks the Court to deny the defendant's motion in its entirety, and to instruct the jury as set forth above regarding the absence of co-defendants from trial.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: ⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯⎯
Nicole M. Argentieri
Rachel J. Nash
Allon Lifshitz
Assistant U.S. Attorneys
(718)254-6232/6072/6164

cc: Defense Counsel (by ECF)