

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NMA/RJN/AL

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

June 21, 2012

**By ECF & Facsimile**

The Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Francis Guerra, et al.
            Criminal Docket No. 10-0147 (S-4)(SLT)

Dear Judge Townes:

      The government respectfully submits this letter to address the admissibility of four consensual recordings (Exhibits 301, 302, 303(b) and 306(b)[1]), made by a cooperating witness Theodore Persico, Jr., ("Persico, Jr.") one of Francis Guerra's former co-defendants and co-conspirators. For the reasons set forth below, the government respectfully submits that the consensual recordings are admissible.

I.    <u>Legal Standard</u>

      Persico, Jr.'s recorded statements are not hearsay because they fall squarely within the definition of co-conspirator statements, made during and in furtherance of the conspiracy, that are admissible when introduced against other members of the conspiracy. Fed. R. Evid. 801(d)(2)(E). The rule provides that a statement "offered against an opposing party" that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. <u>Id</u>.

      In order to admit a statement pursuant to this Rule, the Court must find by a preponderance of the evidence that a conspiracy existed between the declarant (<u>i.e.</u> Persico, Jr.) and the defendant (<u>i.e.</u> Guerra) and that the statement was made during and in furtherance of the conspiracy. <u>See</u>, <u>e.g.</u>, <u>United States v. Orena</u>, 32 F.3d 704, 711 (2d Cir. 1994); <u>United States</u>

---

      [1]    The transcripts of these recordings are identified as 301T, 302T, 303(b)T and 306(b)T.

v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990); Bourjaily v. United States, 483 U.S. 171, 175 (1987)). If those requirements are satisfied, the statements are admissible at trial as non-hearsay, regardless of whether the declarant - in this case, Persico, Jr. - testifies.

In addition, the Confrontation Clause is not implicated. Under Crawford v. Washington, 541 U.S. 36, 61-62 (2004), a declarant's testimonial out-of-court statement is inadmissible at trial, even if it falls within a hearsay exception, unless the declarant is unavailable and the opposing party had a prior opportunity to cross-examine him. However, if the statement is not testimonial, and falls within a hearsay exception, then it is admissible regardless of whether the declarant testifies. Davis v. Washington, 547 U.S. 813, 817-18 (2006).

The Second Circuit has explicitly held in United States v. Burden, 600 F.3d 204 (2d Cir. 2010) that statements recorded by a cooperating witness are not testimonial. Those statements are thus admissible whether or not the cooperating witness, or the individual whom he recorded, testify at trial. Similarly, in United States v. Fahane, 634 F.3d 127, 161-162 (2d Cir. 2011), the Second Circuit specifically held that recordings of the defendant's co-conspirators made by a cooperating witness were admissible, despite the fact that the co-conspirators were not available for cross-examination, because those statements are not testimonial.[2] The Court explained:

> [The defendant] submits further that [the co-conspirator's] recorded statements were inadmissible under Rule 801(d)(2)(E) because they were not made in furtherance of the conspiracy, but instead were "idle chatter." We are not persuaded. [The co-conspirator]

---

[2] During oral argument on June 20, 2012, defense counsel suggested that the recorded statements are not admissible because the cooperating witness is not a co-conspirator. Fed. R. Evid. 801(d)(2)(E) expressly defines "statement[s] by a co-conspirator" (emphasis added) as non-hearsay that is admissible to prove "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." Thus, as Fahane makes clear, there is no basis for excluding the recordings on the grounds that Persico Jr.'s, statements were made to a cooperating witness, whom Persico, Jr. believed to be one of his criminal associates.

2

>was plainly seeking to persuade someone whom he thought could admit him to al Qaeda that he and [the defendant] were trustworthy and would, in fact, provide material assistance to that organization. That [the co-conspirator's] statements were sometimes vague and rambling does not alter the fact that, in their entirety, they were made in furtherance of an agreement with [the defendant] to provide material support for terrorism. In any event, [the defendant] does not show that any possible digressions from the conspiratorial purpose in [the co-conspirator's] statements were prejudicial . . . . [The defendant's] reliance on Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, to mount a Confrontation Clause challenge to the receipt of [the co-conspirator's] statements is foreclosed by United States v. Saget, 377 F.3d 223 (2d Cir. 2004), in which this court held that "a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of Crawford," id. at 229. As then-Judge Sotomayor explained in writing for the Saget panel, Crawford instructs that the critical factor in identifying a Confrontation Clause concern is "the declarant's awareness or expectation that his or her statements may later be used at a trial." Id. at 228. Here, there is no question that in his conversations with [the cooperating witness/undercover], [the co-conspirator] was unaware that he was speaking to agents for the government or that his statements might later be used at a trial. Because [the co-conspirator's] recorded statements are thus not testimonial in nature, this case is on all fours with Saget, and [the defendant's] Confrontation Clause challenge fails.

Fahane, 634 F.3d at 161-162 (citations omitted); see also, United States v. Logan, 419 F.3d 172, 178 (2d Cir. 2005) ("In general,

statements of co-conspirators in furtherance of a conspiracy are non-testimonial."); United States v. Dupree, 10-CR-628 (KAM), 2011 WL 5884219, at *17 (E.D.N.Y. Nov. 23, 2011) (holding that the recorded statements of the defendant's co-conspirators to a cooperating witness were admissible at trial because they were non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(E) and did not violate the defendant's right to confrontation as interpreted in Crawford).

II. Persico, Jr. and Guerra Are Co-Conspirators

Here, the evidence at trial has already established beyond a preponderance that Persico, Jr., and the defendant were participants in a racketeering conspiracy for the benefit of the Colombo family, which included, among other crimes, the conspiracy to murder Joseph Scopo, as well as other members and associates who opposed the Persico family's control over the Colombo family in the early 1990s. Anthony Russo and Salvatore Mangiavillano have both testified that the defendant was in Persico, Jr.,'s crew. Their testimony has further established Guerra's involvement in a pattern of racketeering activity with Persico, Jr. For example, Mangiavillano described the defendant's involvement in drug trafficking with Persico, Jr., for the benefit of the Colombo family and Persico, Jr., in particular. He also described the tribute money that the defendant paid to Persico, Jr., and Guerra's involvement in the Colombo family war on behalf of the Persico faction. Russo has likewise described Guerra's participation in the racketeering enterprise with Persico, Jr., and Guerra's involvement with Persico, Jr., in Colombo family war murder conspiracies, including the Scopo murder. Additionally, Russo testified that both he and the defendant were members of Persico, Jr.'s crew in the late 2000s and at the time these recordings were made.

III. Persico, Jr.,'s Statements Were Made In Furtherance of the Conspiracy

Persico Jr.'s statements on the four consensual recordings that the government seeks to admit are intended to: (1) educate the cooperating witness regarding Guerra's position in the Colombo family; (2) advise the cooperating witness about his plan to use Guerra to protect the interests of a company that was to be operated for the benefit of the Colombo family; (3) inform the cooperating witness about the tribute that Colombo family associates are expected to pay to people like Persico,

4

Jr.; and (4) educate the cooperating witness regarding the rules and structure of organized crime.

A. <u>Government Exhibit 301</u>

During the recorded conversation on February 1, 2008, Persico, Jr. discussed with the cooperating witness his plan to earn money from a business operated by a Colombo family associate. Persico, Jr., stated, "I'm just looking to get another business, another earn." Persico, Jr., then explained that he intended to have Guerra work at the company, which would protect the company from being extorted by other organized crime families or criminals by making it known that the company is under the protection of the Colombo family. Persico, Jr., advised the cooperating witness, "I actually wanted to put BF [Guerra] there. . . . Anybody comes to bother him, BF says, 'whoa whoa whoa, backup.' BF's there."

It has been established through trial testimony that the Colombo family earns money in part by operating legitimate businesses that receive the protection of the Colombo family. In this discussion, Persico, Jr., is seeking the cooperating witness's assistance in establishing the Colombo family's control over a particular business, which is in furtherance of the conspiracy to generate money for the Colombo family. He is further advising the cooperating witness of his plan to use Guerra, a loyal member of his crew, as a means to provide protection to that business. Thus, his statements, which are intended to further the monetary goals of the Colombo family, are made in furtherance of the racketeering conspiracy. The statements are highly relevant to the charges against Guerra as they help establish that Guerra is a trusted member of the enterprise who Persico, Jr., uses to further the Colombo family's monetary interests.

B. <u>Government Exhibit 302</u>

During the recorded conversation on February 2, 2008, Persico, Jr., advised the cooperating witness about what is expected of the associates and members of his crew - his "friends." He stated, "If I got somebody as my best friend, and I'm gonna say the guy is my dear friend, my partner, I'm gonna make sure he got the same thing I got, or close to it." In other words, Persico, Jr., was advising the cooperating witness that Colombo family associates are expected to pay tribute money to

people like Persico, Jr.  He then advised the cooperating witness that "Anthony [a reference to Anthony Russo] and BF [a reference to the defendant]" are his best friends, thereby educating the cooperating witness about Guerra's position in the family and the resulting obligations and authority Guerra had.  Implicit in Persico, Jr.'s comment was that the cooperating witness is also expected to share with Persico, Jr., a portion of any proceeds he earns.  Thus, Persico Jr.'s, statements further the racketeering conspiracy.  These comments are probative of the defendant's relationship of trust with Persico, Jr., and his position in the enterprise.

    C.    <u>Government Exhibit 303(b)</u>

During the recorded conversation on February 4, 2008, Persico, Jr., advised the cooperating witness about the structure of organized crime.  In particular, Persico, Jr., advised that the Colombo family is supposed to protect the associates of a family member who is incarcerated.  He stated, "I'm just saying, that's, that's the situation I'm trying to explain to you.  If you're my friend, and I go to jail, you're still my friend.  My friends take care of you for me."  In other words, Persico, Jr., was explaining that when an organized crime figure is incarcerated, his associates are not released from the family, and should be protected from threats by other families.  Persico, Jr., further advised,

> when I went to jail, I had all my friends around me.  Y'know what I told them, "See my cousins.  My cousins will take care of you while I'm away."  And that's how all my friends all stayed with my cousins while I was away.  They didn't get bounced around.  They're my friends.  I come home, they're my friends still.

These statements were plainly meant to educate the cooperating witness about the manner in which the Colombo family ensures that associates remain with the family.  Persico, Jr., also contrasted the situation of his own friends - friends such as the defendant - who received the protection of the Colombo family and Persico, Jr.'s cousins in particular [a clear reference to Michael and Alphonse Persico], to the situation Ronnie D'Agostino, another participant in the conversation.  D'Agostino, unlike Persico Jr.,'s friends, was not receiving

6

protection from the members of the crime family because the individual to whom he previously answered, and who provided protection, was believed to have participated in a proffer with the government. The statements are highly relevant because they explain why individuals such as the defendant, who Persico, Jr., previously described as one of his best friends, remained loyal to the Colombo family, even during Persico, Jr.'s, incarceration. They also help to establish the rule that exists in organized crime against cooperating with the government, and educates the cooperating witness about the implications that such cooperation can have for other organized crime members and associates.

    D.    <u>Government Exhibit 306(b)</u>

In the recorded conversation on July 30, 2008, Persico, Jr., advised the cooperating witness that Joey Scopo should not have been "straightened out" - a reference to being inducted into a crime family - because "we killed his father." This statement is a direct reference to the murder of Joseph Scopo, one of the crimes charged against the defendant. As trial testimony has established, Persico, Jr., and the defendant conspired, with others, to kill Joseph Scopo to end the Colombo family war. In this statement, Persico, Jr., confirms the Persico faction's responsibility for the Scopo murder, thereby educating the cooperating witness about the Colombo family war and the need to show the proper respect to the Persico family. Moreover, Persico, Jr.,'s statements further the conspiracy by explaining a rule relating to the process for induction into the crime family. Specifically, Persico, Jr., advises that it is a sign of disrespect to the Persico family to induct Scopo's son into another crime family.

Persico, Jr.'s statements are clearly highly probative of the Scopo murder. Persico, Jr., uses the word "we" when he takes credit for his involvement in the Scopo murder, to indicate that the murder was planned and completed not by him alone but by individuals loyal to the Persico faction during the Colombo War. Thus, his statement helps prove that the murder was indeed part of the racketeering conspiracy. In addition, his statement corroborates trial testimony regarding the rules for proposal of associates for induction into an organized crime family and the ability of other members to have input in that process.

IV. <u>Conclusion</u>

      For the reasons set forth above, the government respectfully submits that Persico, Jr.'s statements on the recorded conversations are highly relevant co-conspirator statements admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).

                                              Respectfully submitted,

                                              LORETTA E. LYNCH
                                              United States Attorney

                             By:  /s/_____
                                              Nicole M. Argentieri
                                              Rachel M. Nash
                                              Allon Lifshitz
                                              Assistant U.S. Attorneys

cc:   Defense Counsel (by ECF)