D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

FRANCIS A. GUERRA,

                   Petitioner,

      -against-

UNITED STATES OF AMERICA,

                   Respondent.
---------------------------------------------------------------------X

UNITED STATES OF AMERICA,

      -against-

FRANCIS A. GUERRA,

                   Defendant.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-4432 (NGG)**

**10-CR-147 (NGG)**

NICHOLAS G. GARAUFIS, United States

Francis A. Guerra ("Petitioner") brings this <u>pro se</u> Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2255 (the "Petition"). (<u>See</u> Pet. (Dkt. 870).) For the reasons stated

below, Guerra's Petition is DENIED.

## I.    PROCEDURAL HISTORY

The court assumes familiarity with the underlying facts of the proceedings. Thus, the

court will only address information relevant to the instant petition.

### A.  The Indictment and Trial

On February 9, 2012, Petitioner and eight co-defendants were charged with multiple

crimes based on their membership in, and association with, the Colombo organized crime family

of La Cosa Nostra. (Superseding Indictment ("Indictment") (Dkt. 376).) [1] Petitioner was

allegedly an associate of the Colombo family. (Id. at 6-7.)

Petitioner's trial commenced on June 4, 2012. (See June 4, 2012 Min. Entry.) [2] On July

11, 2012, the jury reached a verdict, finding Petitioner guilty of (i) conspiracy to distribute and

possess with intent to distribute prescription drugs in violation of 21 U.S.C. §§ 846, 841(a)(1),

and 841(b)(1)(C); (ii) distribution of prescription drugs in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(C); and (iii) four counts of wire fraud in violation of 18 U.S.C. § 1343. (See Am.

J. (Dkt. 724) at 1-2.) Petitioner was found not guilty as to Count 1 (Racketeering Conspiracy),

Count 20 (Extortion Conspiracy), and Count 21 (Extortion). (Id.)

### B. The Pre-Sentence Investigation Report and the Fatico Hearing

The Probation Department produced a Pre-Sentence Investigation Report ("PSR") which

found that the total weight of the drugs involved in Counts 22 and 23 was 159.43 grams. (PSR ¶

---

[1] The court will only refer to the fourth superseding indictment, which Petitioner was ultimately tried on. (See Indictment (Dkt. 376).) Guerra was charged with: (1) racketeering conspiracy in violation of 18 U.S.C. § 1962(c); (2) conspiracy to embezzle from employee benefit plans in violation of 18 U.S.C. § 664; (3) embezzlement from employee benefit plan in violation of 18 U.S.C. §§ 664, 2, and 3551; (4) Hobbs Act extortion conspiracy in violation of 18 U.S.C. §§ 1951(a) and 3551; (5) Hobbs Act extortion in violation 18 U.S.C. §§ 1951(a), 2, and 3551; (6) conspiracy to embezzle from employee benefit plans in violation of 18 U.S.C. §§ 371 and 3551; (7) embezzlement from employee benefit plans in violation of 18 U.S.C. §§ 664, 2, and 3551; (8) extortionate extension of credit conspiracy in violation of 18 U.S.C. §§ 892(a), 2, and 3551; (9) extortionate extension of credit in violation 18 U.S.C. §§ 892(a), 2, and 3551; (10) extortionate collection of credit conspiracy in violation of 18 U.S.C. §§ 894(a)(1) and 3551; (11) extortionate collection of credit in violation of 18 U.S.C. §§ 894(a)(1), 2, and 3551; (12) financing an extortionate extension of credit in violation of 18 U.S.C. §§ 893, 2, and 3551; (13) wire fraud conspiracy in violation of 18 U.S.C. §§ 1349 and 3551; (14) wire fraud in violation of 18 U.S.C. §§ 1343, 2, and 3551; (15) Hobbs Act extortion conspiracy in violation of 18 U.S.C. §§ 1951(a) and 3551; (16) Hobbs Act extortion in violation of 18 U.S.C. §§ 1951(a), 2, and 3551; (17) Hobbs Act attempted extortion in violation of 18 U.S.C. §§ 1951(a), 2, and 3551; (18) Hobbs Act extortion conspiracy in violation of 18 U.S.C. §§ 1951(a) and 3551; (19) Hobbs Act attempted extortion in violation of 18 U.S.C. §§ 1951(a) and 3551; (20) Hobbs Act extortion in violation of 18 U.S.C. §§ 1951(a) and 3551; (21) Hobbs Act extortion conspiracy in violation of 18 U.S.C. §§ 1951(a) and 3551; (21) Hobbs Act extortion in violation of 18 U.S.C. §§ 1951(a), 2, and 3551; (22) conspiracy to distribute prescription drugs in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) and 18 U.S.C. § 3551; (23) distribution of prescription drugs in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. §§ 2 and 3551; (24)-(27) wire fraud-prescription drugs in violation of 18 U.S.C. §§ 1343, 2, and 3551. (See id.)

[2] Francis Guerra's case was reassigned to Judge Nicholas G. Garaufis from Judge Sanda L. Townes on February 22, 2018. (See February 22, 2018 Not. of Case Reassignment.)

21.) Accordingly, the Department found that the Guidelines offense level was 32 and the Guidelines range was 135 to 168 months' imprisonment because Petitioner was in Criminal History Category II. (Id. ¶¶ 50-63, 110.) On October 19, 2012, Guerra objected to the Department's finding regarding the drug quantity. (See Letter of Obj. to Sentencing Mem. (Dkt. 638) (Ex. C) at 1-2.) After the Government stated that the Probation Department's drug quantity finding was correct, the district court ordered a Fatico hearing to determine the drug amount. (See May 22, 2013 Min. Entry.)

On June 11, 2013, Judge Townes conducted a Fatico hearing to determine the drug quantity, offense level, and imprisonment range. (Tr. of Criminal Cause for Fatico Hr'g ("Tr. Fatico Hr'g") (Dkt. 664-2) at 1.) The Government offered into evidence trial testimony of cooperating witness Anthony Russo. (Id. at 98.) Russo testified at trial that, in 2010, he along with Ambrose Fabbro, and Petitioner participated in a scheme to obtain and re-sell Oxycontin. (Id. at 98-105.) Petitioner's role in the scheme, according to the testimony, was to obtain prescriptions for the drug due to his previous injuries stemming from a motorcycle accident. (Id. at 100.)

On July 24, 2013, the district court made its findings of fact. (July 24, 2013 Tr. of Criminal Cause for Sentencing (Dkt. 893-1).) The court made findings as to the amount and strength of pills as prescribed to Petitioner on each date reflected in the documentary evidence. (Id. at 3-6.) The court also found that Russo had testified credibly about the prescription drug scheme and Petitioner's role in the scheme. (Id. at 6-7.) Ultimately, the court found that the Government satisfied its burden of proving by a preponderance of evidence that Petitioner was responsible for all the pills prescribed to him, except for the pills he had ingested himself. (Id. at

12-13.) Furthermore, the court found, after reviewing the parties' submissions, that it could consider uncharged and acquitted conduct at sentencing. (Id. at 15-25.)

### C. The Sentencing

The district court sentenced Petitioner on September 23, 2013. (Sept. 23, 2013 Min. Entry (Dkt. 711).) The court found that, pursuant to the Sentencing Guidelines, the total offense level was 32, the defendant was in Criminal History Category II, and the Guidelines range of imprisonment was 135 to 168 months. (See id; see also Sept. 23, 2013 Tr. of Criminal Cause for Sentencing ("Sept. Tr.") (Dkt. 893-2) at 2.) The court also found by a preponderance of the evidence that Petitioner participated in certain acquitted crimes, including the murder of Michael Devine, the murder of Joseph Scopo, and the assault of Gene Lombardo. (Id. at 19-23.) The court explained that these acquitted crimes were relevant sentencing considerations regarding Petitioner's danger to the public and the likelihood of recidivism. (Id. at 25-26.)

The court also considered Petitioner's physical conditions, and, after consulting with the Bureau of Prisons ("BOP"), found that the BOP could manage his unique medical conditions. (Id. at 26-27.) Ultimately, the court sentenced Petitioner to a 168-month term of imprisonment and a three-year term of supervised release. (Id. at 26-27.) The court imposed restitution in the amount of $2,175.31. (Id. at 27.)

### D. The Appeal and Sentencing Reduction

Petitioner filed a notice of appeal to the district court's final judgment on March 21, 2014. (See Notice of Appeal (Dkt. 726).) Petitioner argued on appeal, inter alia, that his sentence was unreasonable because it was based in part on acquitted conduct. See United States v. Guerra, 647 Fed. App'x 38, 39 (2d Cir. 2016). On April 26, 2016, the Second Circuit issued an order affirming the district court judgment in its entirety. Id.

4

On June 1, 2015, Petitioner filed a motion to reduce his sentence based on amendments to the Sentencing Guidelines pertaining to drug offenses. (Mot. to Reduce Sentence (Dkt. 813) at 1.) On September 11, 2015, the Government filed a response acknowledging that the amendments reduced the applicable Guidelines range from 135-168 months to 108-135 months, but opposing a reduction based on the defendant's criminal history. (Resp. in Opp. to Mot. to Reduce Sentence (Dkt. 821) at 6.) On November 17, 2015, the district court granted the motion and reduced Petitioner's term of imprisonment from 168 months to 135 months. (See Nov. 17, 2015 Order, at 1.)

### E. The Petition for a Writ of Habeas Corpus

Petitioner timely filed the instant Petition on July 25, 2017, primarily asserting that he received ineffective assistance of counsel at trial, sentencing, and on appeal. (See Pet. at 1.)

Petitioner asserts that he received ineffective assistance of counsel at trial because of his trial counsel's failure to petition the court for Criminal Justice Act ("CJA") funds for the "retention of private investigator, experts, [and] summary witness to support [his] . . . defense" (id. at 11) and because of his trial counsel's "fail[ure] to investigate, prepare and mount a defense to counts 22-27 of the indictment" (id. at 16). Petitioner claims that he received ineffective assistance of counsel at sentencing because "[c]ounsel failed to investigate and present evidence . . . that the B[OP] does not provide the therapy needed . . . for pre-existing conditions." (Id. at 20.) Petitioner further argues that his counsel inadequately litigated the issue of drug-quantity, failed to assert his innocence, and failed to call Fabbro to testify at the sentencing. (Id. at 20, 22.) Petitioner claims that he received ineffective assistance of counsel on appeal by asserting that his appellate counsel inadequately argued the substantive reasonableness of his sentence and failed to challenge the district court's reliance on acquitted conduct. (Id. at 24-27.) Petitioner

further claims that the district court violated his constitutional rights by (1) communicating ex parte with the BOP and (2) considering Petitioner's statement to pre-trial services. (Id. at 28, 31.) Finally, Petitioner asserts, with no specificity, that he (1) "remains incarcerated in violations [sic] of his Eighth Amendment protections," and (2) "is actually innocent of all counts of conviction."[3] (Id. at 33.)

On October 1, 2018, the Government filed an opposition brief in response to Guerra's Petition. (See Gov't Resp. in Opp'n Pet. ("Gov't Resp.") (Dkt. 893).) On January 21, 2019, Petitioner filed his reply. (See Pet'r Reply ("Reply") (Dkt. 896).).

## II.    STANDARD OF REVIEW

### A. Section 2255 Standards and Procedural Bars

Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), permits a prisoner who was sentenced in federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" when he claims "the right to be released upon the ground that the sentence was imposed," among other reasons, "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) (citing United States v. Frady, 456 U.S. 152, 165 (1982)). Therefore, a habeas petitioner must show "both a violation of [his] Constitutional rights and 'substantial prejudice' or a 'fundamental

---

[3] These two claims are barred from review because they were not raised on appeal and Petitioner has not shown cause or prejudice. See, e.g. Massaro v. United States, 538 U.S. 500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"); United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Yick Man Mui v. United States, 614 F.3d 50, 54 (2d. Cir. 2010).

miscarriage of justice.'" Ciafarano v. United States, 585 F. Supp. 2d 360, 368 (E.D.N.Y. 2008) (quoting Ciak, 59 F.3d at 301).

Furthermore, in the case of a collateral challenge, two separate rules may preclude claims from being relitigated. Yick Man Mui, 614 F.3d at 53. The first of these is the mandate rule, which "bars re-litigation of issues already decided on direct appeal." Id. (citing Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993)). The mandate rule precludes relitigation of issues either expressly or impliedly resolved by the mandate of the appellate court. See id. (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)); see also United States v. Basciano, 465 F. App'x 9, 13 (2d. Cir. 2012) (summary order). However, this bar does not apply to claims of ineffective assistance of counsel. "[T]he Supreme Court has explained that 'in most cases[,] a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.'" United States v. Rosa, 666 F. App'x 42, 44 (2d Cir. 2016) (summary order) (quoting Massaro, 538 U.S. at 504).

The second rule "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." Yick Man Mui, 614 F.3d at 54; see also Thorn, 659 F.3d at 231; United States v. Perez, 129 F.3d 255, 260-61 (2d Cir. 1997). However, a petitioner may raise such claims "where the issues were not raised at all on direct appeal due to ineffective assistance of counsel." Perez, 129 F.3d at 261 (internal quotation marks and citations removed). Thus, when "a petitioner seeks to raise an ineffective assistance of counsel claim for the first time in the § 2255 context, the petitioner may bring his claim regardless of whether it could have been raised on direct appeal." Cai v. United States, No. 13-CV-3617 (ARR), 2013 WL 5934314, at *3 n.5 (E.D.N.Y. Nov. 1, 2013) (citing Yick Man Mui,

614 F.3d at 54); see also United States v. Sessa, No. 92-CR-351 (ARR), 2011 WL 256330, at *17 (E.D.N.Y. Jan. 25, 2011), aff'd, 711 F.3d 316 (2d Cir. 2013).

In § 2255 proceedings, the movant bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000). "[T]he pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

### B. Evidentiary Hearings

Courts are directed to hold evidentiary hearings in proceedings under § 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A [petitioner] seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)) (emphasis added). This determination is "analogous" to summary judgment proceedings: "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." Id. (quoting Puglisi, 586 F.3d at 213). "A district court has broad discretion to hear further evidence in habeas cases." Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999). See also Townsend v. Sain, 372 U.S. 293, 318 (1963) ("In every case [the district judge] has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.").

The Second Circuit has "held that in cases involving claims that can be, and are often made in any case,' the judge may properly rely on his or her knowledge of the record and may

permissibly forgo a full hearing and instead request letters, documentary evidence, and affidavits to aid in its resolution of the claim." Puglisi, 586 F.3d at 215 (quoting Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (alteration adopted)). In this proceeding, Petitioner has set forth no specific facts which raise any material issues of fact requiring a hearing. Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no evidentiary hearing is necessary. 28 U.S.C. § 2255(b). See also United States v. White, 972 F.2d 16, 22 (2d Cir. 1992) (district court did not abuse its discretion by not conducting an evidentiary hearing where it was unnecessary to resolve issues that would be the hearing's focus).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel at Trial

#### 1. Legal Standard

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend VI. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." Lafler v. Cooper, 566 U.S. 156, 165 (2012). To establish that counsel's performance was constitutionally defective, a habeas petitioner must generally satisfy the performance and prejudice test from Strickland v. Washington, 466 U.S. 668 (1984). The petitioner bears the burden of showing that (1) "the lawyer's performance fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Torres v. Donnelly, 554 F.3d 322, 325 (2d Cir. 2009) (citations and internal quotation marks omitted).

First, under Strickland's "performance" prong, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the attorney otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The focus of this inquiry is "on the fundamental fairness of the proceeding whose result is being challenged." Id. at 696.

## 2. Analysis

Petitioner argues that his trial counsel's failure to petition the court for $20,000 in CJA funds for the retention of a private investigator constitutes ineffective assistance of counsel. (Pet. at 11.) Petitioner asserts that his counsel determined that "Ambrose [Fabbro], Ligouri, and Starkman needed to be interviewed for trial purposes." (Id.) According to Petitioner, he could not afford to pay for a private investigator to interview these individuals and his counsel did not advise him that he could seek financial assistance by way of the CJA process. (Id. at 12.) Petitioner also argues that his trial counsel's failure to request CJA "funds for investigation and expert testimony at the sentencing hearing" constituted ineffective assistance of counsel (id. at 15) and contends that his CJA request would have been granted. (Id. at 13.) In response, the Government argues that it is "unlikely" that Petitioner "would have qualified for any CJA funding at any stage of his case," and that it would have been unnecessary for Petitioner's defense counsel to retain a private investigator. (Gov't Resp. at 17.) The Government also asserts that "putting Fabbro, Dr. Ligouri or Dr. Starkman on the stand would probably have hurt the defendant rather than helped him." (Id.)

Petitioner has not shown that the failure to petition the court for CJA funds was prejudicial to the outcome of Petitioner's trial. Petitioner claims that his counsel determined that "Ambrose [Fabbro], Ligouri, and Starkman needed to be interviewed for trial purposes." (Pet. at 11.) However, Petitioner has not identified why these individuals needed to be interviewed by a private investigator, or how the absence of a private investigator has undermined the fairness of his trial proceedings. Cf. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984) ("[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." (emphasis added)).

The Government correctly points out that Petitioner's counsel could have interviewed these individuals themselves without hiring a private investigator. (See Gov't Resp. at 17.) The court is unable to identify a reason why retaining a private investigator would have had a reasonable probability of changing the result of the proceeding. Thus, Petitioner has failed to meet his burden that trial counsel's failure to petition the court for CJA funds was prejudicial to the outcome of Petitioner's trial.

Petitioner further argues that his trial counsel failed to defend against counts 22-27 of the indictment. (Pet. at 16.) Specifically, Petitioner alleges that his counsel failed to "engage in the discovery process and refused to obtain the necessary discovery material the Government possessed to establish [Petitioner's] real innocence to Counts 22-27 of the indictment," and that his counsel failed to cross-examine Russo on the drug-distribution allegation. (Id. at 16-17.) In response, the Government argues that Petitioner has "offer[ed] no basis to believe that the Government suppressed exculpatory evidence . . . or that defense counsel should have suspected that it had." (Gov't Resp. at 19.) The court agrees. Petitioner's claim that his counsel failed to "engage in the discovery process" (Pet. at 16.) is a conclusory allegation insufficient to sustain a § 2255 motion. See United States v. Romano, 516 F.2d 768, 771 (2d Cir. 1975) (holding that the district court properly rejected petitioner's § 2255 motion without a hearing because the motion was based on conclusory allegations); United States v. Malcom, 432 F.2d 809, 812 (2d Cir. 1970) (district court may deny petitioner's § 2255 motion without a hearing "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false, or patently frivolous" (citations omitted)); see also United States v. Holmes, 44 F.3d 1150, 1158 (2d Cir. 1995) (rejecting defendant's argument that counsel's "shortcomings" denied defendant effective assistance of counsel because defendant "cannot satisfy either prong of the Strickland

test without specifying what the 'shortcomings' are"); Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995) (rejecting petitioner's claim that his counsel "failed to perform an adequate and timely pre-trial factual and legal investigation" where petitioner did not allege any facts to support his contention). Moreover, Petitioner has not identified the type of evidence his counsel failed to request, or how that evidence would be relevant to establishing his innocence. Therefore, Petitioner has failed to overcome the strong presumption that his counsel acted reasonably. See id. at 238.

Furthermore, Petitioner has failed to establish that his trial counsel's handling of Russo's testimony fell below an objective standard of reasonableness. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. "Among a lawyer's strategic choices that are generally unassailable on collateral attack are 'whether to call any witnesses on behalf of the defendant, and if so which witnesses to call,' as well as '[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner.'" Hunley v. United States, No. 7-CR-168-A, 2014 WL 3749147, at *5 (W.D.N.Y. July 29, 2014) (citing United States v. Neresian, 824 F.2d 1294, 1321 (2d Cir. 1987)). In the instant case, Petitioner's trial counsel made a strategic decision not to cross-examine Russo. Petitioner merely asserts, in a cursory fashion, that Russo is "a life-long criminal, murderer, and a mendacious liar." (Pet. at 19.) This allegation is insufficient to overcome the "virtually unchallengeable" strategic choice of not "engag[ing] in cross-examination . . . ." See Strickland, 466 U.S. at 690-91; Neresian, 824 F.2d at 1321. Therefore, the court rejects Petitioner's cursory argument that his counsel was ineffective for failing to cross-examine Russo.

### B. Ineffective Assistance of Counsel at Sentencing

1. Legal Standard

Claims of ineffective assistance of counsel during the sentencing process are considered under the two-part "performance and prejudice" Strickland test, described above. See, e.g., Young v. United States, No. 10-CV-6944 (BSJ), 2013 WL 12177806, at *2 (S.D.N.Y. Jan. 4, 2013); DeCarlo v. United States, No. 04-CV-1438 (CPS), 2008 WL 141769, at *6 (E.D.N.Y. Jan. 14, 2008). With regard to the "prejudice" prong of Strickland, "[i]n the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." Abramo v. United States, No. 12-CV-1803 (JSR) (HBP), 2014 WL 1171735, at *11 (S.D.N.Y. Mar. 21, 2014) (quoting Garafola v. United States, 909 F. Supp. 2d 313, 331 (S.D.N.Y. 2012)). See also United States v. Pozuelos-Morales, 526 Fed. App'x 74, 75-76 (2d Cir. 2013) (summary order); United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997).

2. Analysis

Petitioner argues that his counsel's failure "to investigate and present evidence . . . that the BOP does not provide the therapy needed . . . for pre-existing conditions" constituted ineffective assistance of counsel. (Pet. at 20.) Petitioner further claims that his counsel inadequately litigated the issue of drug-quantity, failed to call Fabbro to testify at the hearing, and did not properly assert his innocence at the Fatico hearing. (Id. at 20-21.) The Government argues that the defense's argument at sentencing regarding the BOP's inability to provide necessary therapy for Petitioner was "thorough and forceful." (Gov't Resp. at 21.) Moreover, the Government asserts that when the sentencing judge "ultimately found that the BOP could address [Petitioner]'s needs, there [was] no basis to believe that [the judge] did so because of some lack of advocacy by the defense." (Id.) The Government also contends that Petitioner "has

14

not identified any useful information an investigator could have provided . . . ." (Id.)
Furthermore, the Government asserts that Petitioner "has not cited, and cannot cite, any basis to
believe that [the sentencing judge] . . . would have decreased [Petitioner's] sentence even if [the
judge] had reached a different conclusion as to the availability of physical therapy in the BOP
system." (Id.)

The court finds that Petitioner has not shown that there is a reasonable probability that the
sentenced imposed would have been different but for the alleged ineffectiveness of his counsel.
First, it is clear from the record that Petitioner's counsel did "investigate and present evidence
. . . that the BOP does not provide the therapy needed . . . for pre-existing conditions." (See id.)
In fact, Petitioner's counsel's argument at sentencing was largely focused on this issue.
Petitioner's counsel initially reminded the court about the severity of Petitioner's progressive
neurological disease. (Sept. Tr. at 4:25-5:11.) Then, defense counsel refuted the BOP's
contention that it could handle Petitioner's medical needs by stating that "[t]he reality is . . . that
Mr. Guerra's hands are getting worse; and a board certified physician submitted a . . . report[]
saying that the thing which actually best managed that condition was physical therapy." (Id. at
5:14-21.) Moreover, Petitioner's counsel pointed out that Petitioner had already been
incarcerated for seven years and had not received any physical therapy because of BOP's policy
that they do not provide physical therapy for inmates with pre-existing conditions. (Id. at 5:22-
6:13.) Finally, defense counsel stated that "the reality is that if your honor sentences Mr. Guerra
to a lengthy prison term he will come out of jail as a cripple, without working hands, and I don't
know that that would be the intention of the court . . . ." (Id. at 6:14-18.) The fact that
Petitioner's counsel investigated the BOP policy and submitted a physician's report demonstrates
that his counsel had in fact "investigate[d] and present[ed] evidence. . . that the B[OP] does not

provide the therapy needed . . . for [Petitioner's] pre-existing conditions." (See Pet. at 20.) See also Percan v. United States, 294 F. Supp. 2d 505, 516 (S.D.N.Y. 2003) (rejecting Petitioner's argument based on his counsel's failure to object to a PSR calculation when, after reviewing the transcript, the court found that his counsel did in fact object to the loss calculation.)

Moreover, Petitioner's counsel's failure to request CJA funds for expert witnesses to testify as to Petitioner's medical condition at the sentencing hearing was not prejudicial. Petitioner's counsel submitted a letter from a physician attesting to the severity of Petitioner's physical condition and his need for physical therapy. (Sept. Tr. at 5:15-18.) The sentencing judge acknowledged that she considered Petitioner's physical condition and, after consulting with the BOP, determined that they could handle his physical condition. (Id. at 26-27.) Petitioner has failed to satisfy the rigorous Strickland standard that additional expert testimony regarding his medical condition would have had a reasonable probability of changing the outcome of his sentence. See Isaza v. United States, No. 04-CV-6096 (LAP), 2008 WL 1849170, at *5 (S.D.N.Y. 2008) (acknowledging that the Strickland standard is rigorous). Thus, Petitioner has not proven by a preponderance of the evidence that his counsel rendered ineffective assistance by failing to request CJA funds for expert witnesses to testify as to his medical condition at the sentencing hearing.

The court also rejects Petitioner's claim that his counsel inadequately litigated the issue of drug-quantity. Petitioner has made a conclusory assertion that his counsel "performed miserably" (see Pet. at 20) on this issue, providing no specificity as to the substance of his claim. See Matura, 875 F.Supp. 237 ("A mere conclusory allegation is insufficient to substantiate a § 2255 motion."). "Even pro se litigants are not permitted to offer bald assertions in support of their claims and leave the court to scour the record in search of facts and law." Dearstyne v.

Mazzuca, 48 F. Supp. 3d 222, 341 (N.D.N.Y. 2011). Petitioner has failed to meet his burden, and his claim that counsel failed to properly litigate drug-quantity is rejected.

Furthermore, the court finds that Petitioner's counsel performed reasonably by failing to assert Petitioner's innocence at the sentencing hearing. In determining Petitioner's sentence, the judge considered the nature and circumstances of the offense as well as the history and characteristics of the defendant, including the charges of which the defendant was acquitted. (See Sept. Tr. at 19:18-20:15.) Nothing in the record indicates that the judge considered the defendant's failure to maintain his innocence as a factor in determining his sentence. Therefore, Petitioner's counsel's alleged failure to assert his innocence at the sentencing hearing did not constitute ineffective assistance of counsel.

Finally, the court finds that Petitioner's counsel's failure to have Fabbro testify at the sentencing hearing did not constitute ineffective assistance of counsel. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-91. "Among a lawyer's strategic choices that are generally unassailable on collateral attack are 'whether to call any witnesses on behalf of the defendant, and if so which witnesses to call . . . .'" Hunley, 2014 WL 3749147, at *4 (citing Neresian, 824 F.2d at 1321). In the instant case, Petitioner's counsel made a strategic decision not to have Fabbro testify at the sentencing hearing which, given the evidence regarding his involvement in the drug-distribution scheme was a reasonable professional judgment.[4] Therefore, the court finds that Petitioner's counsel was objectively reasonable in choosing not to have Fabbro testify at the sentencing hearing.

---

[4] Judge Townes found that Petitioner had listed Fabbro's cell phone number as his own home telephone number when he began obtaining prescriptions of pain medication from Dr. Ligouri. (Sent. Tr. Ex. A at 3.) Additionally, Judge Townes found that telephone records indicated contacts between Petitioner and Fabbro on and around the dates when Petitioner received prescriptions. (Id. at 8-9.)

## C. Ineffective Assistance of Counsel at Appeal

### 1. Legal Standard

The Strickland two-prong test is also used to evaluate a claim of ineffective assistance of appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). First, Petitioner must show that his counsel was objectively unreasonable in failing to raise the issue on appeal, and then must show a reasonable probability that, but for his counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal. See Chrysler v. Guiney, 14 F. Supp. 3d 418, 457 (S.D.N.Y. 2014) (quoting Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (alteration adopted)).

Under the first prong, "it is difficult to demonstrate that counsel was incompetent" for "fail[ing] to raise a particular claim" because "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288; see also Jones v. Barnes, 463 U.S. 745, 754 (1983) (appellate counsel is under no "duty to raise every 'colorable' claim suggested by a client"); Mayo, 13 F.3d at 533 ("In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533 (citation omitted); see also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) (finding deficient performance where appellate counsel "fail[ed] to raise a well-established, straightforward, and obvious . . . claim"); Claudio v. Scully, 982 F.2d 798, 805 (2d

Cir. 1992) (noting that a court may find deficient performance where "[n]o reasonably competent attorney [w]ould have missed the . . . claim" and appellate counsel's "decision not to raise the claim cannot be viewed reasonably as a strategic decision").

Under the second prong, "a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the [] court." Mayo, 13 F.3d at 534 (internal quotations omitted and alterations adopted). "A reasonable probability is one sufficient to undermine confidence in the outcome of the . . . appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).

### 2. Analysis

Petitioner claims that his appellate counsel was ineffective on two grounds. First, Petitioner claims that his appellate counsel made an inadequate argument regarding the substantive reasonableness of his sentence. (See Pet. at 24, 25.) Second, Petitioner claims that his appellate counsel did not adequately challenge the district court's reliance on acquitted conduct. (See id. at 26-27.) In response, the Government argues that because Petitioner's sentence fell within the Guidelines range, it would have been exceedingly unlikely that the Second Circuit would have found the sentence substantively unreasonable. (See Gov't Resp. at 23.) Additionally, the Government contends that appellate counsel's decision to challenge the district court's reliance on acquitted conduct in a summary fashion did not constitute ineffective assistance. (See id. at 23-24.)

The court finds that Petitioner's appellate counsel rendered constitutionally effective assistance. The Government is correct that because Petitioner's sentence fell within the Guidelines range, it would have been unlikely that the Second Circuit would have found the sentence substantively unreasonable. It is appropriate for appellate counsel to limit an argument

that is likely meritless. C.f. Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) ("[F]ail[ing] to include a meritless argument does not fall outside the wide range of professionally competent assistance to which a defendant is entitled." (internal quotations and citations omitted)) (alterations adopted). However, the mere fact that Petitioner's counsel addressed the claim on appeal is, in itself, fatal to Petitioner's argument. In order to demonstrate ineffective assistance of appellate counsel, the petitioner must show that his counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533 (citation omitted) (emphasis added). In this case, Petitioner's appellate counsel did not omit the argument because he did, in fact, address the reasonableness of Petitioner's sentence. See Guerra, 647 F. App'x at 39.

Petitioner's appellate counsel also performed reasonably by limiting arguments regarding the district court's reliance on acquitted conduct. Here, as well, Petitioner's appellate counsel did not choose to omit this argument on his appeal; it was argued to the Circuit. See id. This alone is fatal to Petitioner's claim. Petitioner's contention that his counsel failed to address the issue more comprehensively is also without merit given that there is both Supreme Court and Second Circuit precedent finding that district courts can consider acquitted conduct in determining a sentence. See United States v. Watts, 519 U.S. 148, 154-55 (1997); see also United States v. Vaughn, 430 F.3d 518, 525-27 (2d Cir. 2005). Therefore, Petitioner's appellate counsel performed reasonably by limiting this argument on appeal.

### D. Whether the District Court Violated Petitioner's Constitutional Rights

In addition to Petitioner's ineffective assistance claims, Petitioner further contends that the district court violated his constitutional rights at sentencing by (1) communicating with the

BOP regarding its ability to provide Petitioner with adequate medical treatment during his incarceration and (2) considering Petitioner's statement to pretrial services. (Pet. at 28, 31.)

The court will not consider these claims because they should have been raised upon appeal to the Second Circuit and Petitioner has not shown "cause and prejudice." See, e.g. Massaro, 538 U.S. at 504 ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"); Thorn, 659 F.3d at 231; Yick Man Mui, 614 F.3d at 54. The "cause and prejudice" standard requires to demonstrate that "some objective factor external to the defense" impeded his ability to raise the claim earlier, Murray v. Carrier, 477 U.S. 478, 488 (1986), but also that the error alleged "worked to his actual and substantial disadvantage, infecting his entire trial with error." United States v. Frady, 456 U.S. 152, 171 (1982) (emphasis in original). Petitioner has failed to make either showing and therefore the court denies Petitioner's claim that the district court violated Petitioner's constitutional rights.

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's [Dkt. 870] § 2255 motion is DENIED. This court has considered all of Petitioner's arguments and finds them to be without merit. Because Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). In addition, this court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully DIRECTED to mail a copy of this order by certified mail, return receipt requested, and by regular mail with proof of mailing, to <u>pro se</u> Petitioner Francis A. Guerra at his address of record.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
    April 10, 2019

NICHOLAS G. GARAUFIS
United States District Judge