UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA

-against-

FRANCIS GUERRA

Defendant.

**MEMORANDUM & ORDER
10-CR-147 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Francis Guerra moves, *pro se,* for an order granting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that his underlying medical condition constitutes an "extraordinary and compelling" circumstance in light of the ongoing COVID-19 pandemic, thus meriting his early release from prison. (*See* Mot. for Compassionate Release ("Mot.") (Dkt. 902).) The Government opposes the motion, arguing that Mr. Guerra has failed to establish that his medical condition is "extraordinary and compelling," that he remains a danger to the community, and that the sentencing factors set forth under 18 U.S.C. § 3553(a) support his continued detention. (See Gov't. Opp. to Mot. ("Opp.") (Dkt. 903).) For the following reasons, Mr. Guerra's motion is DENIED.

## I.   BACKGROUND

Mr. Guerra is currently serving a 135-month sentence at Allenwood Low FCI ("Allenwood Low"). (Opp. at 1.) He has been approved for placement at a Residential Reentry Center (RRC) on or around January 7, 2021, with a projected full release date of May 12, 2021. (*Id.*; Def.'s Reply ("Reply") (Dkt. 905) at ECF p. 9.) On July 11, 2012, Mr. Guerra was convicted of conspiracy to distribute and distribution of prescription drugs, specifically OxyContin, and wire fraud. (Opp. at 2.) At his sentencing hearing on September 23, 2013, the late Judge Sandra L. Townes found

by a preponderance of the evidence that Mr. Guerra had partici-
pated in a number of the crimes for which he had been acquitted,
including two murders and an assault, and that he was a long-
term associate of the Colombo crime family of La Cosa Nostra.
(*Id.* at 4.) According to Judge Townes, these factors were rele-
vant in determining the extent to which Mr. Guerra posed a
danger to society and his likelihood of recidivism, leading her to
impose a sentence at the top of the applicable Sentencing Guide-
lines range. (*Id.*)

Judge Townes also considered Mr. Guerra's pre-existing medical
condition at sentencing. In 1985, Mr. Guerra was involved in a
motorcycle accident, which left him with a spinal cord injury that
has caused him long-term neurological damage. (Mot. at ECF pp.
1-2, 14.) At the hearing, his attorney asserted that Mr. Guerra
experienced muscle atrophy and a limited ability to use his
hands, and that while he used pain medication to deal with the
immediate effects of his condition, physical therapy was the best
option for long-term treatment to counteract the muscle atrophy.
(Sentencing Hearing Tr. ("Tr.") (Dkt. 903-1) at 5:5-21.) Never-
theless, Judge Townes proceeded to impose the maximum
available sentence after being assured that the Bureau of Prisons
("BOP") would be able to handle Mr. Guerra's medical needs. (*Id.*
at 26:25-27:3.)

Mr. Guerra is 55 years old. (June 17, 2011 Bay Ridge Medical
Imaging Rep. ("June 17 BRMI") (Dkt. 902) at ECF p. 35.) On
April 15, 2020, he filed a request for compassionate release with
the Warden of FCI Allenwood, who denied his request on April
24. (Mot. at ECF p. 1; Denial of Req. for Compassionate Release
("Denial") (Dkt. 902) at ECF p. 22.) On August 17, 2020, Mr.
Guerra submitted the instant motion, arguing that he should be
granted compassionate release because the neurological issues
stemming from his motorcycle accident put him at increased risk

for suffering the worst consequences of COVID-19 should he contract the virus. Specifically, he reports suffering chronic back pain, frequent migraine headaches, and limited use of his hands and extremities as a result of "chronic spinal [cord e]ncepholomalacia on his C3 to T2 vertebrae and [c]ostovertgeral arthrosis on his T1-T2 ve[r]tebrae." (Mot. at ECF pp. 2, 14-15.) He asserts that the "T1-T2 degradation impact[s] the nerve operation of the upper respiratory system." (*Id.* at ECF p. 2.)

Mr. Guerra states that social distancing is impossible at Allenwood, where he lives in a three-person room with six-foot walls and no doors or ceiling, and his specific unit houses 160 inmates when it is designed for only 120. (*Id.* at ECF p. 11.) He states further that the communal facilities are cleaned only once a day. (*Id.* at ECF p. 10.) At the time he filed his initial motion, he reports that there were positive cases of the virus at Allenwood Low, however he does not specify how many. (*Id.* at ECF p. 11.) Data from the BOP indicate that as of November 9, 2020, there were no confirmed cases of COVID-19 among Allenwood Low residents or staff.[1] Mr. Guerra implies that the actual number of COVID-19 cases at Allenwood Low may be higher than BOP reports indicate because there is allegedly limited testing at the facility. (Mot. at ECF p. 11.)

## II.  LEGAL STANDARD

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to reduce a defendant's sentence upon motion of the Director of the BOP, or upon the motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a

---

[1] Federal Bureau of Prisons, *COVID-19 Inmate Test Information*, https://www.bop.gov/coronavirus (last visited November 9, 2020).

request by the warden of the defendant's facility, whichever is earlier." *Id.*

A court may reduce a defendant's sentence under § 3582(c)(1)(A) only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id.* The court therefore must consider "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* The Sentencing Commission, to which Congress delegated the responsibility to "describe what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C. § 994(t), has determined that a defendant's circumstances meet this standard when, *inter alia*, the defendant is "suffering from a terminal illness" or a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), 1(D). The Sentencing Commission has additionally determined that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Finally, the defendant has the burden to show he is entitled to a sentence reduction. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).[2]

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

## III. DISCUSSION

This court has previously acknowledged the potentially dire effects of COVID-19 on prison populations. *See United States v. Mongelli*, No. 02-cr-307 (NGG), 2020 WL 4738325, at *2 (E.D.N.Y. Aug. 14, 2020); *United States v. Efrosman*, No. 06-cr-95 (NGG), 2020 WL 4504654, at *2 (E.D.N.Y. Aug. 5, 2020); *United States v. Donato*, Nos. 03-cr-929-9, 05-cr-60-10 (NGG), 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020); *United States v. Porges*, No. 17-cr-431 (NGG), 2020 WL 350415, at *2 (E.D.N.Y. June 29, 2020). Still, "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States v. Nwankwo*, No. 12-cr-31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020).

At 55 years old, Mr. Guerra is not in the highest-risk age bracket for complications associated with the virus. Although his neurological condition appears to be serious, the CDC does not list neurological issues like Mr. Guerra's among the conditions that are known to increase the risk of severe illness should he contract COVID-19.[3] Additionally, medical records from earlier this year indicate that Mr. Guerra has access to pain medication, and that he is able to exercise on "the bike, rowing machine, and [to] walk[] on the treadmill 3 times per week for 30-40 minutes,"

---

[3] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-condtions.html?CDC_AA_refVal= https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 9, 2020).

(Opp. at 13), thus negating any claim that his condition prevents him from providing for his own self-care within the facility.[4]

Further, as of this writing, Allenwood Low currently has zero inmates or staff who are COVID-19 positive, and one inmate and one staff member currently recovering from the virus.[5] Overall, Allenwood Low has tested 175 inmates and has had three positive cases among the inmates.[6] These data suggest that BOP has so far been successful in preventing the spread of COVID-19 at Allenwood Low.[7]

---

[4] The court notes that Mr. Guerra also claims he has been denied physical therapy for the duration of his incarceration. While this claim has no bearing on his present motion, if true, it would be troubling given the assurances BOP provided Judge Townes during sentencing. At that time, Judge Townes stated that she "ha[d] contacted the Bureau of Prisons" and was "assured that they c[ould] handle the defendant's physical condition." (Tr. at 27:1-3.) A few months later, in a letter to the Government, BOP stated that it "is able to provide, and does provide, physical therapy for inmates where appropriate," and indicated that it "w[ould] be able to provide appropriate care for Mr. Guerra." (Jan. 31, 2013 BOP Letter to Allon Lifshitz ("BOP Letter") (Dkt. 902) at ECF pp. 26-27). The Government does not confirm whether Mr. Guerra has been provided with physical therapy or explain why, if not, BOP has failed to address his medical needs in this manner. (Opp. at 13.) Nevertheless, being denied physical therapy does not create an extraordinary or compelling basis to reduce his sentence pursuant to compassionate release in this case.

[5] Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Nov. 9, 2020).

[6] Federal Bureau of Prisons, *COVID-19 Inmate Test Information*, https://www.bop.gov/coronavirus (last visited Nov. 9, 2020).

[7] The court does not consider whether compassionate release would be consistent with the factors set forth in 18 U.S.C. § 3553(a) because it concludes that Mr. Guerra has not established that there are extraordinary and compelling reasons that support the reduction of his sentence.

## IV. CONCLUSION

For the foregoing reasons, Mr. Guerra's motion for compassion-
ate release is DENIED.

SO ORDERED.


Dated:      Brooklyn, New York
            November 12, 2020

                                        /s/ Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge